THE STATE OF KANSAS v. CHARLES B. KELLERMAN.

14 135
52 354
14 135
57 540

1. INSTRUCTIONS; *Specific; Falsus in uno, falsus in omnibus.* Where an instruction is asked, that if a particular witness, naming him, has willfully testified falsely, etc., the justice should disregard his entire testimony, it is not error for the court to refuse such instruction and substitute one that if *any witness* has willfully testified falsely, etc.

2. ———— *Larceny; Elements.* Where the court properly instructs the jury that in order to convict they must be satisfied from the evidence "that the defendant stole, took and carried away" the property alleged to have been stolen, it is not error to refuse a specific instruction that "*taking* is a material part of larceny, and must be established by competent evidence."

3. ———— *Testimony of an Accomplice.* Where the principal witness for the state is an accomplice, it is not error to refuse an instruction that such accomplice "stands before the jury in the character of an impeached witness, and as such his testimony requires confirmation," when the jury have been instructed that "in determining the weight and credit to be given such testimony the jury should use great caution, and unless the testimony of the witness is corroborated by other evidence in some material point in issue, the defendant should be acquitted, as it would be unsafe to convict upon the sole and uncorroborated testimony of an accomplice."

4. EVIDENCE; *Competent — Corroborative.* Where the larceny charged was the larceny of a horse, and the owner testified that the horse was taken out of his pasture during the night-time, and the accomplice testified that an arrangement was made between the defendant and himself for stealing and selling a horse, and in pursuance thereof, on the night that this horse was taken out of the pasture it was brought by defendant to witness and by him taken to a neighboring town and sold, and produced a writing admitted by defendant to have been written and signed by himself, certifying that the witness was "duly authorized to sell" this horse, described in the writing as "my horse," *held*, that this writing was sufficient corroboratory testimony to sustain a verdict of guilty.

5. ———— *Newly-Discovered; Its Character, etc.* Where a motion for a new trial is made on the ground of newly-discovered evidence, it is as a general rule essential that the affidavits of the newly-discovered witnesses should be produced or their absence accounted for; and it is also as a general rule true, that the unsupported affidavit of the defendant or his counsel will not be sufficient.

*Appeal from Coffey District Court.*

INFORMATION, charging *Kellerman* with the larceny of a horse, the property of one J. J. Rullier. Trial at the August Term, 1874. The facts, and the errors complained of, are sufficiently stated in the opinion. Verdict of guilty. New trial refused, and the defendant appeals to this court.

*W. A. Johnson*, and *W. L. McConnell*, for appellant.

*A. M. F. Randolph*, Attorney-General, for The State.

The opinion of the court was delivered by

BREWER, J.: Appellant was convicted in the district court of Coffey county of the crime of grand larceny, and from this conviction brings his appeal to this court. The errors alleged are in reference to the instructions, and in overruling a motion for a new trial.

With reference to the first we have little difficulty. The rulings of the court were unquestionably correct. For in-

1. Instructions; falsus in uno, etc.

stance, the appellant asked the court to instruct the jury that if one witness, naming him, testified willfully falsely, etc., they must disregard his entire testimony. Instead of this the court charged that if any witness testified willfully falsely, etc. The latter is the proper way. To single out a witness, and by name give such an instruction in reference to him, suggests a suspicion if it does not imply a belief on the part of the court of the witness' perjury.

Again, the court was asked to charge that "*taking* is a material part of larceny, and must be established by competent evidence." Instead of this the court charged that the

2. Larceny; the question of "taking."

jury must be satisfied that "defendant stole, took and carried away," etc.; "and that if A. should feloniously take into his possession the property of B., and immediately deliver the same to C., this would be a sufficient taking and carrying away to constitute the crime of larceny

in A. There was nothing to emphasize the question of "taking." The larceny charged was of a horse. It was turned by the owner into a pasture at night. Before morning, in pursuance of a previous arrangement, it was handed by the defendant to his accomplice, and by the latter taken immediately to Olathe, and sold. We see no error in this charge of the court.

The main witness for the state was an alleged accomplice. Upon this counsel for defendant asked these two instructions:

3. Accomplice; instructions.

"The testimony of Allen Roberts is that of an accomplice, and must be corroborated by evidence tending to convict the defendant of the offense charged, or the jury must acquit the defendant.

"Allen Roberts stands before the jury and court in the character of an impeached witness. As such, his testimony requires confirmation."

These instructions were refused, and instead thereof the following was given:

"The jury are charged that the admission of accomplices (to testify) as witnesses for the state is permitted and justified by the necessities of the case, it often being impossible to bring the principal offender to justice without their testimony. But in determining the weight and credit to be given such testimony, the jury should use great caution; and unless the testimony of the witness Allen Roberts is corroborated by other evidence in some material point in issue, the defendant should be acquitted, as it would be unsafe to convict upon the sole and uncorroborated testimony of an accomplice."

Under this instruction it is claimed by counsel that the witness might be corroborated as to the fact of the larceny, but in nothing tending to connect the defendant with it, and that under such circumstances it would be improper to convict. We do not think the jury were misled. The testimony of the witness Roberts did not go at all to the circumstances of the taking. He was not present at the time. The horse was brought to him by the defendant, after it had been stolen. His testimony related to the disposition of the horse thereafter, and the connection of the defendant with

10—14 KAS.

the transaction. Corroborating testimony is that which supports the testimony already given, not that which proves an entirely different part of the case. So Allen Roberts, to have been corroborated, must have been sustained as to some of the facts as to which ·he testified. These are the principal questions made upon the instructions, and in them we see no error.

A motion for a new trial was overruled. Upon this, two questions are presented; 1st, The verdict was not sustained

**4. Evidence; competent; corroborative.** by the evidence; and 2d, There was newly-discovered evidence. We think the verdict was sustained. The owner of the horse testified to placing his horse in the pasture at night, and its disappearance before morning, and to finding it in a few days at Olathe. Roberts testified to an arrangement between Kellerman and himself for stealing a horse; that Kellerman, in pursuance thereof, on the night said horse was stolen brought it to him, and he rode it to Olathe and sold it; that he sold it for $60, of which he received $10, and was to receive the balance when he "sent up a title." That he went back and obtained from Kellerman his "title." This title was produced and read as follows: "I, C. B. Kellerman, a resident of Coffey county, Kansas, duly authorized Allen Roberts to sell my bay horse which left here July 23d, 1874, which he says he sold in Olathe, Saturday, July 25th, 1874.—C. B. KELLERMAN." When testifying in his own behalf, Kellerman admitted the writing and signing of this paper. This we think was very strong corroboration of Roberts' testimony. True, he attempted to explain the writing, but the explanation was far from satisfactory.

We think also that the showing of newly-discovered evidence was insufficient. The only testimony offered was the

**5. Newly-discovered evidence.** affidavit of one of the counsel for the defendant, that two of the witnesses on the former trial would testify to additional facts of which neither the defendant nor his counsel were aware before the retirement of the jury. Neither the affidavit of the defendant nor that of

either witness is presented, nor any excuse shown for not producing them. It is laid down in Graham & Waterman on New Trials, (vol. 3, p. 1065,) as essential that "the affidavits of the newly-discovered witnesses should be produced, or their absence accounted for." And again, on page 1067, that "the information must come directly from the newly-discovered witnesses, so that it may appear just what they know, and what they are ready to testify." To like effect are the authorities cited on the same and succeeding pages. See also, *Manix v. Maloney*, 7 Iowa, 81; *Keough v. McNitt*, 6 Minn., 513. While this rule may not be of absolute and universal application, and while cases may arise in which the showing of newly-discovered evidence is so full and satisfactory that a new trial ought to be granted, even without the production of the affidavits of the new witnesses, or any explanation of their absence, yet for all ordinary cases the rule is a good one, well supported by authority, and ought to be enforced. If a defendant could by his own affidavit of newly-discovered testimony secure a new trial, it would soon be found that verdicts of guilty rested on very slippery foundations. In this case, it appears from the record that these witnesses were residents of the county, that they were present at the trial, and it does not appear that they had since absented themselves, nor is any intimation or excuse given why their affidavits were not produced. This we think fully justified the court in overruling the motion for a new trial. Nor is the testimony itself of such conclusive a character that we should feel warranted in holding that the court erred in refusing a new trial on account of it. The owner of the horse has testified that he saw, at or about the place where his horse had evidently been taken out of the pasture, "the track of a very fine boot;" that a neighbor of his measured it, and produced before the court and jury the measure. Now the affidavit states that such witness would testify that he had measured the tracks made by the accomplice and witness Allen Roberts, since the commencement of the trial, and that such tracks were identical in form, appearance and

length with the tracks seen by himself and others "at the place above indicated, and also that another witness would testify that Roberts had on, during the trial, the same boots that he was wearing a day or two before the larceny." There is however on the other hand nothing to show that there was anything peculiar about these tracks except that they were the "tracks of a very fine boot"—nothing to show that the boots of the defendant would not have made exactly the same track. And indeed, when the measure of this track was produced on the trial, it seems hardly probable that counsel so acute and skillful as the able gentlemen who conducted the defense, should not have compared it with the track made by the defendant, and if there was any difference between them have called the attention of the jury to such difference. On the whole case we think that the judgment must be affirmed.

All the Justices concurring.