## THE STATE OF KANSAS V. ARTHUR WINNER.

1. JUDGMENT, *Not Reversed for Immaterial Error.* A judgment will not be reversed for immaterial error, not even in a criminal case; nor where the defendant is under sentence for murder in the first degree.

2. EVIDENCE; *Acts and Declarations of Co-Conspirator.* The acts and declarations of one co-conspirator in furtherance of the principal object and design of the conspiracy, may be shown in evidence against each of the conspirators.

3. ———— Where a party has treated certain acts and declarations, purporting to be those of a particular third person, as though the same were in fact the acts and declarations of such third person, and where such acts and declarations would be competent evidence provided they were in fact the acts and declarations of such third person, the same may be introduced in evidence against said party, and be treated as the acts and declarations of such third person, unless other evidence is introduced showing the contrary.

4. ORDER OF TESTIMONY; *Ordinarily Principal Fact to be First Proven.* Ordinarily when the acts and declarations of one co-conspirator are offered in evidence as against another co-conspirator, the conspiracy itself should first be established *prima facie,* and to the satisfaction of the judge of the court trying the cause; but this cannot be always required. It cannot well be required where the proof of the conspiracy depends upon a vast amount of circumstantial evidence — a vast number of isolated and independent facts. And in any case where such acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial taken together shows that such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before, or after, the introduction of such acts and declarations.

5. EVIDENCE; *Acts and Declarations of Third Party, in Absence of Accused.* Where a person seems to be preparing to leave a certain place, and does in fact leave, but before leaving he bids a friend "good-bye," and says he is going to a certain other place, these acts and declarations may be given in evidence along with other evidence as *tending* to show that such person did in fact go to such other place, although the party against whom they are introduced was not present at the time the acts were performed, or the declarations made.

6. CRIMINAL LAW; *Corpus Delicti; Circumstantial Evidence.* In a criminal prosecution, and even in murder in the first degree, the *corpus delicti* may be proved by circumstantial evidence.

*Appeal from Sedgwick District Court.*

AN information was filed in the district court, charging Joseph W. McNutt and *Arthur Winner* with the crime of murder in the first degree. The charging part of the information is as follows:

"That heretofore, to-wit, on the 25th day of December 1873, at the county of Sedgwick and state of Kansas, Joseph W. McNutt and Arthur Winner, unlawfully, and of their malice aforethought, contriving and intending one W. W. Seiver, otherwise known as 'Texas,' otherwise known as 'Tex,' then and there being in a certain frame house situated upon lot No. 73 on Main street in the city of Wichita, in the county and state aforesaid, feloniously, willfully, deliberately, premeditatedly, and of their malice aforethought, to burn, kill and murder, then and there, with force and arms, unlawfully, feloniously, willfully, deliberately, premeditatedly, and of their malice aforethought, did set fire to and burn the said frame house, he the said W. W. Seiver then and there, before, at, and during the said burning, being in the said frame house, and they the said Joseph W. McNutt and Arthur Winner then and there, before, at, and during said setting fire and burning, well knowing him the said W. W. Seiver to be in said frame house, and that they, the said Joseph W. McNutt and Arthur Winner, by so setting fire to, and firing and burning the said frame house as aforesaid, then and there did unlawfully, willfully, feloniously, deliberately, premeditatedly, and of their malice aforethought mortally burn the body of him the said W. W. Seiver, by means of which said mortally burning of the body of him the said W. W. Seiver he the said W. W. Seiver then and there instantly died."

The defendants asked for separate trials, and *Winner* was tried at a special term begun and held on the 18th of May 1874. The material facts and proceedings are sufficiently stated in the opinion. The jury returned a verdict finding "the defendant guilty of murder in the first degree, as charged in the information." New trial refused. The judgment and sentence was, that the said "*Arthur Winner*" be taken hence by the sheriff of the county of Sedgwick to the jail of the said county of Sedgwick, and that from thence he be taken

by said sheriff to the penitentiary of the state of Kansas and be delivered to the warden of said penitentiary, and that he be by said warden, at such time as the governor of the state of Kansas for the time being may appoint, hanged by his neck until he is dead." From this sentence and judgment *Winner* appeals to this court. No briefs on file.

*M. S. Adams,* and *Harris & Harris,* for appellant.
*H. C. Sluss,* and *W. E. Stanley,* for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for murder in the first degree. The defendants, Joseph W. McNutt and Arthur Winner, were duly charged by information of the county attorney with killing and murdering one W. W. Seiver, otherwise known as "Texas," otherwise known as "Tex." A separate trial was granted to the defendants, and Arthur Winner was tried, convicted, and sentenced, and he now appeals to this court. The county attorney prosecuted the action upon the theory that the defendants caused the death of said Seiver in pursuance of a previous conspiracy entered into by them for the purpose of fraudulently procuring from the "Metropolitan Life Insurance Company" the sum of $5,000. Or in other words, the defendants, in pursuance of a previous design and arrangement, procured an insurance policy from said company on the life of said McNutt for the sum of $5,000, and then, in order to make it appear that McNutt had subsequently been killed by robbers, and thereby that the insurance money had become due, killed Seiver, under such circumstances, and burned his body in such a manner, as to lead people to believe that McNutt had been killed, and that the lifeless body of Seiver was that of McNutt. We believe that the theory of the prosecution is the true theory of the case, and that such theory was sufficiently substantiated by the evidence introduced on the trial. We do not propose to discuss all the evidence however. It is voluminous and circumstantial, and composed of a vast num-

ber of minor facts which when taken separately may not seem to be very important in the case, but which when taken together seem to prove the guilt of the defendant beyond all reasonable doubt. To discuss only a few of these minor facts, would seem to be useless; and to discuss the whole of them, would make this opinion entirely too voluminous. We would say however, that no theory has yet been advanced except that of the prosecution which can satisfactorily explain all of these minor facts. And we do not think that any reasonable theory can be advanced except that of the prosecution. Neither do we think it is necessary to discuss all the points made by the defendant in this court. The defendant has made twenty-eight principal points in this court, and by subdividing some of his principal points has made several other minor points. Now to discuss all of these points in detail would be very much like writing a treatise on criminal law. We have examined all of these points carefully, and have also examined carefully every portion of the record to which they are supposed to apply, and we do not find any ruling or decision of the court below so materially erroneous as to require or authorize a reversal of the judgment. The only ruling upon which this court has at any time had any doubts was the admission of certain telegraphic dispatches in evidence. These dispatches are four in number, and as follows:

No. 1. "*J. W. McNutt, 73 Main street, Wichita:* O. K. Tex starts this Thursday A.M. No coat or boots."
(Signed,) "WINNER."

No. 2. "*A. Winner, Topeka, Kansas:* No money come in. All paid out. Will write." (Signed,) "J. W. McNUTT."

No. 3. "*December 22d, 1873. W. W. Seiver, care H. C. Copson, Topeka, Kansas:* Come to-day without fail. Go to postoffice; letter for you." (Signed,) "A. WINNER."

No. 4. "*Topeka, December 23d, 1873. Winner:* I leave here this afternoon train." (Signed,) "W. W. SEIVER."

The objections that the defendants urged in the court below against the admission of these dispatches were, first, "That defendant could not be bound by any dispatch sent by McNutt

to him; second, that there is no proof that either of these dispatches was sent by either of the persons whose names are attached to them." The court overruled these objections, and allowed the dispatches to be read to the jury, to be considered by them on condition that they found evidence that the dispatches purporting to be sent by Winner were actually sent by him. We shall now take up the dispatches in their order.

No. 1. The evidence shows that this dispatch was sent from Kansas City, Missouri, and actually received by McNutt at Wichita, Kansas, on December 18th 1873. The evidence also shows that Winner and Seiver (otherwise called "Tex") were at Kansas City, and had a conversation with each other about that time. The evidence also shows that Seiver left Kansas City about the 18th of December, and said he was going to Wichita. He however stopped at Topeka, Kansas, and stayed there until December 24th, the day before his alleged murder at Wichita. Winner started with Seiver from Kansas City. Whether he stopped at Topeka or not, we think the evidence does not show. He arrived at Wichita December 19th, 1873. Immediately after McNutt received said dispatch No. 1, he sent dispatch No. 2 to A. Winner, Topeka. Winner and McNutt were partners in the painting business, and their place of business was at Wichita. Seiver was also a painter by trade. The evidence also shows that Winner was previously to December 24th 1873, and up to that time, expecting Seiver to arrive at Wichita, and that the defendants had sent money to him. Indeed, the evidence tends to show that Winner expected Seiver to accompany him from Kansas City to Wichita on December 18th and 19th, but that Sevier got off or was put off the train for some reason not shown by the evidence. We think that there is no other evidence tending to show that Winner sent said dispatch No. 1. In all probability he sent it. But even if he did not, still, it was received by McNutt, a co-conspirator, a partner in guilt as well as in business, and was received in furtherance of their common purposes and common designs, and therefore for that reason it was admissible in evidence.

(1 Greenleaf Ev., §§ 111, 233, 197; Wharton's Crim. Law, § 702, et seq.) But even if it was not admissible in evidence, still every material fact which it tends to prove was incontestibly proved by other evidence, and therefore its admission in evidence was immaterial.

Dispatch No. 2. This dispatch was actually sent by McNutt, but whether it was ever received by Winner is not shown. It proves nothing that is material in the case however, and therefore it need not be further noticed.

Dispatch No. 3. This dispatch is numbered 4 in the record. It was actually sent from Wichita to Topeka on Dec. 24th 1873, although it is dated December 22d. There is no direct evidence showing that Winner sent it, or that Seiver received it; but in all probability both occurred. On that very same day, (December 24th,) Winner went to the office of the telegraph operator in Wichita three or four different times and asked for a dispatch from Seiver; and the telegraph operator testified that he (the operator) "asked for an answer several times before it came." And finally it did come, and it was dispatch No. 4 as above given, (numbered 3 in the record.) Winner received said dispatch No. 4 as a dispatch from Seiver, and as the dispatch he was expecting. It was sent from Topeka to Wichita on December 24th, although it is dated December 23d. At that time Seiver was in Topeka, and probably sent the dispatch.

Dispatch No. 4. We have already stated about all that is necessary concerning this dispatch. There is no direct evidence that Seiver sent it. But it must be presumed that he did, for Winner received and accepted it as a dispatch from Seiver, and as the dispatch that he (Winner) was expecting. The evidence also shows that Seiver on that same day, December 24th, was in Topeka, and there bade a friend "good-bye," and said he was going to Wichita. And he has never since been seen or heard of in Topeka or elsewhere.

We think the dispatch was properly admitted in evidence. The theory of the prosecution is, that when Seiver arrived at Wichita, which was about midnight between December 24th

and 25th, the defendants immediately took him to their rooms and there stupefied him with whisky and laudanum, and then set the building on fire and burned him to death, and so burned his body that it was past recognition; that McNutt immediately left the state, and went to an obscure village in Ray county, Missouri, and there shaved off all his whiskers, colored his hair, and changed his name, so as to avoid recognition; that Winner remained at Wichita, attempting to make people believe that McNutt and himself were alone in their rooms on that night, that they were then and there attacked by robbers, that he (Winner) was badly injured, and McNutt killed, and that the lifeless body of Seiver found in said burning building was that of McNutt.

We think this theory of the prosecution was sufficiently proved on the trial. All these things were done in accordance with and in furtherance of the original conspiracy and design of McNutt and Winner, and therefore each was responsible for the same. Seiver was probably one of the most suitable persons that could have been found for their nefarious purpose. He was a drunken, worthless fellow, who could probably be easily induced to drink whisky and laudanum. He was without family or property, and was likely to cause as little inquiry as that of almost any other person that could have been found. The defendant claims that the evidence was not sufficient to prove that the body found in the burning building was that of Seiver. Now if it was not that of Seiver, whose body was it? Every particle of the evidence that had any application to the question tended to prove that it was the body of Seiver; and not a particle of the evidence tended to prove that it was the body of any other person. The judgment of the court below must be affirmed; and in affirming the judgment we think we decide the following among other questions, these being the most important questions in the case: 1st, A judgment will not be reversed for immaterial error, not even in a criminal case, nor where the defendant is under sentence for murder in the first degree. 2d, The acts and declarations of one co-conspirator in fur-

therance of the principal object and design of the conspiracy, may be shown in evidence against each of the conspirators. 3d, Where a party has treated certain acts and declarations purporting to be those of a particular third person as though the same were in fact the acts and declarations of such third person, and where such acts and declarations would be competent evidence provided they were in fact the acts and declarations of such third person, the same may be introduced in evidence against said party and be treated as the acts and declarations of such third party, unless other evidence is introduced showing the contrary. 4th, Ordinarily when the acts and declarations of one co-conspirator are offered in evidence as against another co-conspirator, the conspiracy itself should first be established *prima facie*, and to the satisfaction of the judge of the court trying the cause. But this cannot always be required. It cannot well be required where the proof of the conspiracy depends upon a vast amount of circumstantial evidence—a vast number of isolated and independent facts. And in any case where such acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial taken together shows that such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before, or after, the introduction of such acts and declarations. 5th, Where a person seems to be preparing to leave a certain place and does in fact leave, but before he leaves bids a friend good-bye and says he is going to a certain other place, these acts and declarations may be given in evidence, along with other evidence, as *tending* to show that such person did in fact go to such other place, although the party against whom they are introduced was not present at the time the acts were performed or the declarations made. (1 Greenleaf Ev., § 108.) The declaration of Seiver that he was going to Wichita, was in the nature of a verbal act, and is explanatory of the other acts, and is a part of the *res gestæ*. 6th, In a criminal case, and even in murder in the first degree, the *corpus delicti* may be proved by circumstantial evidence. We think this is all

that is necessary. We might take up the points made by defendant and answer them *seriatim*, thus: *First:* A defendant in a criminal case may be arraigned and tried at a special term of court. *Second:* It is not error to refuse a change of venue where the preponderance of the evidence introduced on the application sustains the ruling of the court. *Third:* It is not error to refuse a continuance asked for on account of the absence of evidence, where the applicant has exercised no diligence to procure his evidence. But we do not think it is necessary to proceed further.

The judgment of the court below is affirmed.

All the Justices concurring.