## THE STATE OF KANSAS V. WILLIAM DOUGLASS.

1. PUBLIC OFFENSE — *Consenting — Not Committing.* A person consenting to a thing which is innocent in itself does not thereby commit a public offense, although the thing may at the time appear to him to be a public offense, and although he may at the time believe the same to be a public offense.

2. CRIME — *Consent, Not Expressed.* Mentally consenting to the commission of a crime, where no expressed consent either by word or act is given, does not make the person consenting guilty of any offense.

3. GOOD CHARACTER — *Evidence — Purpose.* Evidence in a criminal case, as to the good character of the defendant, may be introduced for the purpose of disproving guilt, and if upon the whole of the evidence introduced, including that of the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, he should be acquitted.

*Appeal from Shawnee District Court.*

ON November 8, 1890, there was an opinion filed in this case, (syllabus and opinion by GREEN, C.,) recommending that the judgment of the district court be affirmed; and by the court it was so ordered — all the justices concurring. The syllabus therein formulated, and declared to be the law, is as follows:

"1. Upon the trial of a person charged with unlawfully placing an obstruction upon a railroad track, it is not error for the court to instruct the jury that if they believe, from the evidence, that another person than the defendant willfully placed the obstruction on the railroad track, and that if they should find from the evidence, beyond a reasonable doubt, that the defendant was present, and encouraged, consented, aided, or advised such other person to place such obstruction on the track, then the defendant would be equally guilty.

"2. Instruction examined, and *held* sufficient.

"3. Voluntary drunkenness is no excuse for crime committed while under its influence.

"4. Where, in the trial of a criminal case, the court instructed the jury generally as to the competency of evidence of good character, and said that in all cases where all

the evidence clearly shows guilt beyond a reasonable doubt, then such former good character can be of little value, *held*, under the circumstances of the case, not to be erroneous."

In due time a motion for a rehearing was filed in behalf of appellant. On April 11, 1891, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*David Overmyer*, for appellant.

*L. B. Kellogg*, attorney general, and *R. B. Welch*, county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: The defendant, William Douglass, was prosecuted criminally in the district court of Shawnee county, upon information, under §§ 103 and 106 of the act relating to crimes and punishments, for willfully and feloniously, on October 22, 1888, placing an obstruction, a railroad tie, upon the railroad track of the Chicago, Kansas & Nebraska Railway, St. Joseph & Iowa Railroad Company lessee, about four miles west of the city of Topeka. He was tried before the court and a jury in January, 1890, and was convicted; and was afterward sentenced to imprisonment in the penitentiary for the term of five years from February 15, 1890. Afterward he appealed to the supreme court, and on November 8, 1890, the judgment of the district court was affirmed. (*The State v. Douglass*, 24 Pac. Rep. 1118.) In due time a motion for a rehearing was filed, and it is now presented to this court for consideration.

The defendant claims that the court below erred in giving the following, among other instructions, to the jury:

"8. If you believe, from the evidence, that another person than the defendant willfully placed the railroad tie on the rails or track of the railroad described in the information, on or about October 22, 1888, in this county—actually placed the tie of solid piece of timber on the said rails or track of the said railroad—and you further find from the evidence,

beyond a reasonable doubt, that the defendant was present when the tie or timber was placed on the railroad track, and encouraged, consented to, aided or advised such other person to place said obstruction on the said railroad track, then the defendant will be equally guilty as if he had willfully placed the obstruction on the track himself, with his own hands.

"9. If you believe, from the evidence, that the special agent, Thompson, or any agent of the railroad company, had reason to believe that the defendant, on October 22, 1888, intended to go up the railroad from Topeka, and that it was suspected that the defendant might place an obstruction on the railroad, in such case it would be proper for the agent of the railroad to send agents or servants along the railroad track, to observe and watch the movements of the defendant. Such diligence on the part of the railroad company was not only lawful, but highly commendable.

"10. If you believe from the evidence that the defendant and one Spenk, on the afternoon of October 22, 1888, started in company with each other from Topeka to the point on the railroad where it is alleged that the obstruction was placed on the railroad track, and that said Spenk was in the employment of the railroad company, or had been in the employment of the company, and that at some time before the obstruction was placed upon the railroad, if you find it was placed on the railroad track as charged in the information, the said defendant agreed or had an understanding that an obstruction should be placed on the track of the railroad by either of them, or both together, and you find from the evidence, beyond a reasonable doubt, that the defendant placed the said obstruction on the railroad track at the time and place and in the manner charged in the information, or that Spenk placed the said obstruction on the railroad as charged in the information with the consent of the defendant, or that the defendant counseled, aided, or abetted Spenk in placing the obstruction on the track as charged, then it is your duty to find the defendant guilty as charged, notwithstanding you may believe that Spenk was in the employ of the railroad company."

"12. If you believe from the evidence that on the afternoon of October 22, 1888, the defendant was in a state of intoxication, still this would not constitute a defense of the offense charged in the information, if the offense was committed by the defendant or by his consent, unless the defendant was in such a state of stupefaction as to be unconscious of right or wrong; and then the defendant would not be excusable if you find

from the evidence, beyond a reasonable doubt, that the defendant started from Topeka with the formed plan or design to accomplish the offense charged in the information, and in pursuance of such plan or agreement the defendant started from Topeka, alone or with another, and placed the obstruction on the railroad track as charged, or counseled, aided, abetted, or advised another to place the obstruction on the track of the railroad.

"13. There has been evidence offered by the defendant respecting his good character as a peaceable, orderly, law-abiding citizen, and such evidence is competent and proper to be considered by the jury in connection with other evidence in the case in determining the guilt or innocence of the defendant of the matters charged against him; and such evidence is particularly important for the defendant in cases where there may be a doubt as to the guilt, and in all such cases the question of character should resolve such doubt, whatever it may be, in favor of the defendant; but in all cases, where all the evidence clearly shows guilt beyond a reasonable doubt, then such former good character can be of little value."

The principal objections urged against the foregoing instructions are as follows: First, it is claimed that these instructions told the jury in effect that if the obstruction was placed upon the railroad track by some person other than the defendant, and if the defendant was present and "consented to" the same, (see eighth instruction,) or whether he was present or absent, if the same was "done with the consent of the defendant," (see tenth instruction,) "or by his consent," (see twelfth instruction,) he should be found guilty of the offense charged against him. Second, it is further claimed that the twelfth instruction, with regard to intoxication, does not correctly state the law. Third, it is also claimed that the thirteenth instruction, with regard to good character, is erroneous. We shall consider these matters in their order.

Evidence was introduced on the trial tending to prove, among others, the following facts: Prior to October 22, 1888, the defendant believed that he had a grievance as against the railroad company. He claimed that he had discovered an obstruction upon the railroad track, had removed it, had reported the same to the railroad company, and that the railroad

company had never offered to pay him anything therefor, but had always afterward treated him with distrust and suspicion. And in fact the company had so treated him.   C. H. Thompson and George Spenk were in the employment of the railroad company, and, among other things, it was their duty to watch the actions of the defendant.   On October 22, 1888, Spenk invited the defendant to go with him up the railroad track west of the city of Topeka.   The defendant consented.   Spenk purchased a bottle of whisky to take along with them; and they went.   But before going Spenk informed Thompson with respect to their contemplated trip, and Thompson then determined to go out that way too.   Thompson then applied to the sheriff of the county to detail an officer to go along with him, (Thompson,) and the sheriff selected Albert McLean, a deputy constable.   The defendant and Spenk started soon after noon of that day.   They rode a part of the way, and walked the remainder.   They traveled until they arrived at or near a bridge on the railroad, about four miles west of Topeka, when they separated.   Thompson and McLean traveled with a horse and buggy, and carried with them arms and handcuffs.   They probably arrived within the vicinity of the bridge prior to the arrival of the defendant and Spenk, when they stopped.   Two colored boys named Dennis were also seen near this bridge.   Thompson threw a railroad tie off the bridge; but as to who put it on, there was and is no direct evidence.   Very soon afterward, Thompson, McLean and the defendant came together very near the bridge, and Thompson and McLean arrested the defendant and put the handcuffs on him.   What became of Spenk is not shown, and he did not testify in the case.   He was not present when the arrest was made.   The two colored boys were still near the bridge, and one of them testified on the trial. Thompson, McLean and the defendant also testified on the trial.   The defendant testified that he did not put the tie on railroad bridge or track, and that he did not know anything about it.   There was much other testimony, but it is not necessary for the purposes of the question now under considera-

tion, that we should state it. The foregoing instructions with
regard to the defendant's *consenting* to the tie being placed on
the railroad track were evidently given upon the hypothesis
that the tie may have been placed upon the railroad track by
Spenk, and that the defendant *consented* thereto. One of
such instructions was given upon the hypothesis that the de-
fendant may have been present when the tie was placed upon
the railroad track, and the others were given upon the hy-
pothesis that he may have been present or may have been ab-
sent, and that he would be guilty of the offense charged against
him, if he consented thereto, whether he was present or ab-
sent. The eighth instruction speaks of the defendant as being
guilty if he was present and "consented to" the transaction.
The tenth instruction uses the words, "or that Spenk placed
the said obstruction on the railroad as charged in the infor-
mation *with the consent* of the defendant," without reference
to the defendant's presence or absence; and the instruction is
also to the effect that the defendant should be found guilty in
such a case, "notwithstanding you [the jury] may believe
that Spenk was in the employ of the railroad company."
The twelfth instruction states that intoxication "would not
constitute a defense of the offense charged in the information
if the offense was committed by the defendant, *or by his con-
sent*, unless the defendant was in such a state of stupefaction
as to be unconscious of right or wrong;" and the *consent* here
spoken of is without reference to the defendant's presence or
absence. If, however, Spenk actually committed a crime by
placing a tie upon the railroad track, and if the defendant
had knowledge of Spenk's actions or intended actions, and that
Spenk intended to commit or was committing a crime, and if
the defendant consented thereto, by any word, act, sign or
motion, in such an intelligent and affirmative manner as to
give encouragement to Spenk to commit the offense, the de-
fendant would also be guilty equally with Spenk, whether
the defendant was present or absent at the time.

Two questions, among others, are involved in these instruc-
tions: First, did *Spenk* commit any public offense? second,

was the consent of the defendant, if he ever gave any consent, of that open or expressed kind as would give encouragement to Spenk to commit the offense? The defendant's theory, as expressed by his counsel, is that Thompson and Spenk were *pseudo* detectives, in the employment of the railroad company, who combined to lead the defendant into doing something that would result in his being convicted of a crime and sent to the penitentiary; that what they did was done as employés of the railroad company, ostensibly for its benefit, and not for its injury, nor for the injury of anyone except the defendant; that it was one of them, Spenk, who placed the tie upon the railroad track, and as he did the same as an employé of the railroad company, which made the act virtually that of the railroad company, no offense was committed, either with or without the consent of the defendant, or to which the defendant could consent; and the defendant further claims that even if a crime was committed by Spenk, still that the defendant did not give any consent thereto, by any word or act, and therefore that he could not be guilty of committing any offense even if he at the time knew that Spenk intended to commit or was committing a crime, and even if he at the time mentally consented thereto. If Spenk was actually an employé of the railroad company, and if he placed such tie upon the railroad track as such employé, and had no intention whatever of doing anything to injure the railroad company or its passengers or freight, and expecting such tie soon to be removed from the railroad track, Spenk would not have committed any offense, and the defendant by consenting to his acts if he did consent would only have been consenting to innocent conduct. A railroad company certainly has a right to place an obstruction upon its own track where no wrong is intended or could reasonably be expected. In this state our statute provides that "Any person who counsels, aids or abets in the commission of any offense, may be charged, tried and convicted in the same manner as if he were a principal." (Crim. Code, § 115.) But we have no statute that makes the *consenting* to a thing, which is innocent in itself, an offense,

**1. Public offense —consenting— not committing.** although the person *consenting* thereto may have believed the thing to be an offense; nor have we any statute making the *consenting* to even the commission of a crime an offense, unless the consent amounts to the *counseling, aiding, or abetting* in the commission of such crime. Hence, where a thing is not an offense at all, a party cannot be guilty of committing an offense by merely consenting thereto; and even where the thing is an offense, a party can be guilty of committing an offense by consenting thereto only where his consent is of that affirmative and expressed character which amounts to a *counseling, aiding, or abetting* in the commission of the offense. "He must do or say something showing consent to the felonious purpose, and must contribute to its execution." (1 Am. & Eng. Encyc. of Law, 63, 64.)

That a person consenting to a thing innocent in itself does not thereby commit a public offense, although the thing may at the time appear to him to be a public offense, and although he may at the time believe the same to be a public offense, see the following cases: *Allen v. The State*, 40 Ala. 334; *Speiden v. The State*, 3 Tex. App. 156; *Regina v. Johnson*, 1 Carr. & M. 218; same case, 41 Eng. Com. Law, 123; *The State v. Jansen*, 22 Kas. 498, 505, *et seq.* And that mental consent to a crime, where no expressed consent is given **2. Crime—consent, not expressed.** by any word or act, does not make the person consenting guilty of an offense, see the following authorities: *Clem v. The State*, 33 Ind. 418; *The State v. Cox*, 65 Mo. 29; *White v. The People*, 81 Ill. 333; *The State v. Hildreth*, 9 Ired. Law, 440; same case, 51 Am. Dec. 369; 1 Whar. Cr. Law, §§ 211, 211*a*, 211*d*. In the case of *Clem v. The State*, ante, the trial court instructed the jury, among other things, as follows:

"If she [the defendant] was present at the time and place of the murder, in any way assisting, aiding, encouraging or contributing toward the murder, she would be guilty as a principal in the crime. *So, if the murder was perpetrated with*

40 — 44 KAS.

*her knowledge and consent, or connivance, she is a principal."*
(Pages 430, 431.)

Upon this instruction the supreme court commented as follows:

"Question is made as to the correctness of the last clause of this instruction. When the jury was told that if the defendant ' was present at the time and place of the murder, in any way assisting, aiding, encouraging or contributing towards the murder, she would be guilty as a principal in the crime,' language was employed embracing every possible case in which she could be guilty as a principal in the second degree. The definition given was full and exhaustive. Nothing could be added to it without error, though it might properly enough be illustrated and explained, that the jury might understand fully the meaning of the language employed, and how to apply it to the facts of the case on trial. This, if done correctly, might be an aid to the jury, and would be entirely unobjectionable." (Page 431.)

"Under this instruction the jury would understand that if they believed, from the evidence, that the prisoner was present when the murder was committed, and was willing or desirous that the bloody deed should be done, they must find her guilty, though that desire had been kept by her a secret, and was entirely unknown to him who inflicted the deadly blow.

"It is plainly not the law that one can be guilty of murder without overt act, who by neither word nor gesture has done anything to contribute to the commission of the homicide, or to assist, encourage, or evince approval of it at or before the fact, and of whom it only appears that he was present and knew of the crime and mentally approved it. The silent thought, however wicked in view of the Searcher of Hearts, is not a crime against our laws, but is left by them to another than a human tribunal." (Page 432.)

In the case of *The State v. Cox,* ante, it was held that "The mere mental approval by a bystander of a murder committed in his presence, does not make him an accomplice in the murder." In the case of *White v. The People,* ante, the supreme court of Illinois used the following language:

"By the second instruction the jury are told that one who stands by when a crime is committed in his presence by an-

other, and *consents* to the perpetration of the crime, is a principal in the offense, and must be punished as such.   The law is, that one who 'stands by and aids, abets, or assists  .  .  . the perpetration of the crime,' is an accessory, and 'shall be considered as principal,' etc.   (R. S. 1874, p. 393, § 274.) There is a plain distinction between '*consenting*' to a crime and 'aiding, abetting, or assisting' in its perpetration.   Aiding, abetting, or assisting, are affirmative in their character. Consenting may be a mere negative acquiescence, not in any way made known at the time to the principal malefactor. Such consenting, though involving moral turpitude, does not come up to the meaning of the words of the statute.   The words of the statute are stronger than those of the instruction."   ( Page 337.)

It is now the opinion of this court that the court below erred in its use of the words "consent" and "consented" in the foregoing instructions, and for such error its judgment must be reversed.   At the time of our former decision in this case we entertained a different opinion, but the argument on the motion for a rehearing has convinced us that we were in error.   The words "consent" and "consented" should be eliminated from the instructions.

The question with reference to intoxication we do not think, under the evidence in the case, requires any comment, as it does not appear from the evidence that the defendant was intoxicated at all at the time when the tie was placed upon the railroad track, or at the time when it was taken off.

With respect to character, the thirteenth instruction of the court below is perhaps subject to criticism.   Evidence in criminal cases of the good character of the defendant may be introduced for the purpose of disproving guilt; and if, upon the whole of the evidence introduced, including that of the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, he should be acquitted. (3 Am. & Eng. Encyc. of Law, 110, 111.)

3. Good character—evidence —purpose.

Our former judgment, affirming the judgment of the district court, will be set aside, and the judgment of such court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.