No. 29,577.

The State of Kansas, *Appellee,* v. J. B. McIntyre, *Appellant.*

(294 Pac. 865.)

Opinion filed January 9, 1931.

*James W. Finley, James A. Allen* and *B. M. Dunham,* all of Chanute, for the appellant.

*William A. Smith,* attorney general, and *Hugo T. Wedell,* county attorney, for the appellee; *T. R. Evans,* of Chanute, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: J. B. McIntyre and Ephraim Garrett were jointly charged with arson, the burning of a hotel and restaurant building, in the city of Chanute in the nighttime of May 2, 1928, when it was inhabited by human beings. Garrett entered a plea of guilty to the charge and was sentenced to the state penitentiary. The defendant, McIntyre, was later tried, found guilty of arson in the first degree, and the sentence imposed was confinement in the penitentiary not less than ten nor more than twenty-one years. McIntyre appeals.

Among the errors assigned by him was the permission given to the prosecution to indorse the names of nineteen witnesses upon the information, shortly before the trial began, and the denial of a motion for a continuance. It appears that three days before permission to indorse was given the county attorney notified defendant's counsel that permission would be asked to make the indorsement. It thus appears that the application was not a sudden or an unexpected surprise. The name of one witness was indorsed after the trial was commenced. It was the name of the railway agent at Emporia who sold a ticket from Emporia to Chanute, and his testimony, as counsel for defendant were advised, would simply be corroborative to some extent of that given by Garrett. It further appears that eleven of the witnesses whose names were so indorsed were never called by the state. Seven of them were mere rebuttal witnesses. Six of them were used by the defendant as his own witnesses. In view of the testimony given by the witnesses so indorsed it is apparent that no prejudice could have resulted to the defendant from the indorsement.

The court is vested with some discretion in the matter of indorsing the names of witnesses upon the information, and unless it appears that there was an abuse of discretion in the ruling or that it prejudiced the rights of the defendant it cannot be regarded as a ground of reversal. (*State v. Taylor*, 36 Kan. 329, 13 Pac. 550; *State v. Mullins*, 95 Kan. 280, 147 Pac. 828.)

Another complaint is based on a remark by the trial court in the presence of the jury when counsel for defendant was pressing the witness Garrett to tell definitely how long a time elapsed after he last saw defendant until the gasoline was poured into a hole at the

side of the building. Garrett had testified that he was employed by the defendant to burn the building and instructed as to the method of burning it, saying to him that there would be no danger to Garrett. In the trial Garrett said that prior to the setting of the fire defendant had pointed out to him the building which he wanted burned, showing him the hole on the side of the building in which gasoline should be poured, after which defendant went away. Garrett procured the gasoline and then went into the hotel that was burned and went to bed. He arose about two o'clock in the morning and started the fire as he was directed. On cross-examination Garrett was asked when was the last time he saw McIntyre before he set fire to the hotel, and he replied, in effect, that the last time was when McIntyre gave him the directions as to the burning of the building.

"Q. How long was that before you poured the gasoline into the hole? A. I don't know.

"Q. What is your best judgment?

"Objection because it was a repetition. Overruled.

"I don't understand it exactly.

"How long was it after McIntyre and you were around there, where you say he showed you this hole, until you poured that gasoline into the hole? A. Well, I told you once; I don't really know exactly how long.

"Q. What is your best judgment? A. Because I went to bed at 9:30 or 10 o'clock; I laid down.

"Q. What is your best judgment as to how long it was, Mr. Garrett?

"Objected because of repetition.

"The Court: This man has answered you faithfully, Mr. Allen; he has been a good witness."

After the remark the question was again repeated and the witness said that he never saw McIntyre any more before he poured the gasoline into the hole. The court then said to the witness, "If you remember how long it was from the time you saw McIntyre until you poured the gasoline, tell how long it was?" and he says, "I don't know how long it was." The witness had gone to bed and been asleep the fore part of the night and could not measure or definitely state how much time elapsed after defendant left him and the starting of the fire. He had estimated that the fire was started about two o'clock in the morning. It is insisted by defendant that the remark of the court that the witness had faithfully answered and had been a good witness, was an indorsement of his credibility and was necessarily prejudicial to the rights of the defendant. Cases

are cited that it is error for the court to express opinions as to the truth or falsity of testimony given by a witness and as to his credibility, as it is the province of the jury to determine these questions of fact regardless of the opinion of the court. Under our procedure the court may not comment on the force of the evidence or the merits of the case, and it should be careful to avoid any expressions in the presence of the jury that might operate to the prejudice either of the prosecution or the accused. The court had a right, however, and it is its duty to supervise and direct the trial, and a remark made to counsel along that line in the course of the trial will not constitute error unless it injuriously affects the rights of the accused. It is manifest that the court, in the remark made, was referring to the fact that the witness had been faithfully trying to answer the question which had been repeated again and again, and was indicating to counsel that repetitions of it were useless and that the witness had acted well in his attempt to give a satisfactory answer. Evidently the remark of the court was not intended as a general indorsement of the credibility of the witness or of his testimony on the merits of the case, but that he was a good witness in that he had answered the repeated question the best he could. Our conclusion is that the jury was not influenced or the defendant prejudiced by the remark.

The next assignment of error is that in the course of the trial, and while the county attorney was reading to the jury an exhibit which had been examined and admitted in evidence, the judge stepped out of the room into the adjoining office of the clerk for a brief time. When he left the court room the attention of the county attorney was called to the fact that the judge had left the bench, and he ceased the reading. The court should have announced a suspension of business when he stepped out, but he probably thought that no question was likely to arise requiring attention while the reading of the document was in progress and that he would return in a moment or two before it was finished. Of course, there cannot be a court without a judge and the judge should be present and cognizant of everything that transpires during the trial. (*State v. Beuerman,* 59 Kan. 586, 53 Pac. 874.) A technical departure from the requirement where there is a momentary absence of the judge during which no action is taken, judicial or otherwise, nor any misconduct of those present in

court, cannot be regarded as reversible error. (*State v. Keehn,* 85 Kan. 765, 798, 118 Pac. 851.)

Some complaint is made of rulings in the admission of evidence. One was the receiving of the evidence of the railway ticket agent who sold a ticket to some one from Emporia to Chanute on a specified day, he could not remember the person to whom it was sold. The witness Garrett, in accounting for his presence in Chanute, had testified that he bought a ticket in Emporia for Chanute, and to corroborate his testimony the ticket agent was permitted to testify that he sold a person he did not know a ticket that day between the points named. The testimony appears to have little probative value in the case, but it was corroborative to a slight extent and certainly does not constitute a ground for a reversal.

Another complaint is an objection to the exclusion of testimony offered to show the value of a building across the street from the one burned. Defendant had offered testimony to the effect that the building burned was of the value of $2,500 or more. That defendant had only $1,000 insurance on it, and only $500 on the contents of the building worth more than $1,000, and his contention was that there was no motive for him to burn the building. The state offered evidence to the effect that the building burned was worth only from $800 to $1,000. To impeach and overcome this testimony offered by the state the defendant called a witness in surrebuttal and asked him the contract price of a building purchased by him which was across the street, an entirely different building from the hotel that was burned, and to this an objection was sustained. Apart from the objection that it was not proper impeaching testimony, it can hardly be considered as competent to show the actual value of the hotel burned. It was not shown to be comparable in any particular beyond the fact that it was located in the neighborhood. However viewed, it was not so material or of a character to be considered a ground of reversal.

Complaint is made of the refusal of the court to give a requested instruction on the subject of alibi. No error was committed in the refusal of the request. That defense is based on the theory that the accused was absent from the scene of the crime charged at the time of its commission, a fact that renders it impossible or at least improbable that the accused could have

committed the offense. It was not charged that the defendant was present when the building was set on fire. The state was prosecuting the case on the theory that he was not personally present, but that it was burned by an accomplice that he had employed for that purpose. His presence was not necessary to the perpetration of the crime, as the evidence tends to show that he took pains to be absent at the starting of the fire and had employed another to do the deed. In such a case the matter of an alibi was not pertinent, and the requested instruction was rightly refused. (*State v. Wolkow,* 110 Kan. 722, 205 Pac. 639.)

There is a further contention that the court erroneously declined to give an instruction defining a principal in the second degree. It is enough to say that it was not applicable to the evidence. The evidence showed that defendant was an accessory before the fact and guilty as a principal in the first degree or not guilty of participating in any way in the crime charged.

A requested instruction advising the jury that the accused could not be convicted on the testimony of an accomplice alone was refused. This theory has been rejected in Kansas and it is now well settled that the uncorroborated testimony of an accomplice, if otherwise sufficient, will sustain a verdict of guilty. The credit to be given to the evidence is a matter for the determination of the jury. (*State v. McDonald,* 107 Kan. 568, 193 Pac. 179; *State v. Bolton,* 111 Kan. 577, 207 Pac. 653; *State v. Logan,* 123 Kan. 743, 256 Pac. 1017; *State v. Eyth,* 124 Kan. 405, 260 Pac. 976.)

Some other objections are made to the conviction, but they are deemed to be without merit. The evidence appears to be sufficient to support the verdict of the jury and the judgment of the court, and finding no material error in the record, the judgment is affirmed.

SMITH, J., not sitting.