No. 32,673

THE STATE OF KANSAS, *Appellee*, v. W. W. HILL, *Appellant*.

(57 P. 2d 49)

Opinion filed May 9, 1936.

*O. R. Stites* and *Jay Sullivan*, both of Emporia, for the appellant.

*Clarence V. Beck*, attorney general, and *Earl B. Swarner*, assistant attorney general, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Appellant was charged, tried and found guilty of the larceny of sixty bags of cottonseed cake, of the value of $135. He has appealed, and contends: The court erred (1) in the reception of evidence, (2) in submitting the case to the jury, and (3) in the instructions given.

Briefly, the facts shown by the evidence, which the jury was entitled to believe, may be stated as follows: Hill was a farmer, and had some livestock, and resided in the southern part of Lyon county. The Browning ranch was about twenty miles to the south, in Greenwood county. In wintering cattle on the ranch cottonseed cake was fed. This was stored in a barn about one hundred yards from a highway. Homer Applegate, who had previously served time for larceny, and Frank, his brother, had known Hill about six months. Hill met them at Emporia one day in December, 1934, and told them he could use some cottonseed cake or corn chop at one dollar a sack. They said they would try to get it for him. He knew how they would get it if they sold it to him at that price. A few days later they went out near Virgil and stole eights sacks of feed, which they delivered to Hill and for which he paid them one dollar per sack. Ross Finnemore, who had a jail record for misdemeanors, went with Homer and Frank Applegate to Hill's place January 5 or 6, and Homer told him they could get him some more feed, and Hill said

he could use it. For some reason they could not get the feed that night and went back after night and reported to Hill. The afternoon of January 9, 1935, Finnemore and Homer Applegate went to Hill's house and talked with him further about getting the cake. Homer asked how much he could use and Hill said as much as 200 sacks. That night Homer and Frank Applegate, Ross Finnemore and a negro, Bill Holt, went to the Browning ranch in two Model T Ford cars, a coupé and a coach, which they parked in a meadow west of the barn. They went to the barn, where there were about 200 sacks of cake, and carried sixty sacks out to the highway and piled them on the grass; then got their cars, loaded thirty sacks of cake on them and drove to the Hill place, reaching there about 3 o'clock in the morning. Hill helped to unload the sacks of cake and put them in his barn, being carful to remove the identifying tags from the sacks. They told Hill about the other thirty sacks out by the road and said they didn't know whether they could get them and get back before daylight. Hill told them it would not hurt anything if they got there after daylight. Hill furnished some gas and oil for one of the cars. They went and got the other thirty sacks and brought them to Hill's place after daylight. He helped them unload, as before, being careful to remove the tags. He paid them $45 in cash and later in the day $15 by check. The cake was worth more than twice that amount.

The next morning A. R. Freeman, the tenant on the Browning ranch, noticed the cake was missing and where it had been piled in the grass. Near there he found a leather suede jacket with the name "Ross Finnemore" written on it. He notified Mr. Browning, the sheriff was called, and in a few days Ross Finnemore was arrested. He told all about it. When charged with the offense he pleaded guilty. He testified for the state at the preliminary examination and trial of Hill. Homer Applegate also testified for the state at Hill's preliminary examination, and was called as a witness on the trial, when he refused to testify on the ground that it might incriminate him. In the meantime he had been tried on the charge and found guilty. At his own trial he had taken the witness stand and repudiated a part of the testimony he gave at Hill's preliminary examination. When he refused to testify at the trial of Hill the state offered in evidence his testimony given at Hill's preliminary examination, and the defense offered his testimony given at his own trial; both were admitted.

Turning now to the questions argued by appellant: (1) That the court erred in admitting testimony. It is contended Finnemore should not have been permitted to testify because he was an accomplice. The court properly instructed the jury as to such evidence. Its weight was for the jury. The point is not good. (*State v. McDonald*, 107 Kan. 568, 193 Pac. 179; *State v. McIntyre*, 132 Kan. 43, 48, 294 Pac. 865.) It is argued it was error to use Homer Applegate's testimony given at the preliminary hearing in view of his repudiation of it at his own trial. The repudiation went to only a few questions. The jury heard both versions and was in position to pass upon the credibility of the witness in the two statements, and the weight to be given all his testimony. (2) It is contended the evidence was insufficient to sustain the conviction. This point is not well taken. The state never contended Hill was personally present at the Browning ranch, and actually helped carry the cake from there. It contended he aided and abetted in the larceny, and charged him as principal, which was proper. (*State v. Eyth*, 124 Kan. 405, 260 Pac. 976.) (3) It is argued the court erred in the instructions given. This is largely a play upon words. The statute (R. S. 62-1016) says: Any person who "counsels, aids or abets" may be tried, etc., as a principal. The court said: Anyone who "knowingly aids, abets, or assists . . . in any way" would be guilty as principal. The objection is to the use of the words "assists," and "in any way." To assist means to aid, and in a sense was a harmless repetition. It was not error to use the words "in any way" for the statute does not discriminate between different ways one may counsel, aid, or abet in the commission of crime.

We find no error in the record. The judgment of the trial court is affirmed.