No. 46,119

STATE OF KANSAS, *Appellee*, v. MAE McLAUGHLIN, *Appellant*.

(485 P. 2d 1352)

Opinion filed June 12, 1971.

*Cliff W. Ratner*, of Ratner, Mattox, Ratner, Ratner and Barnes, of Wichita, argued the cause, and *Walter F. McGinnis*, of McGinnis and McGinnis, of El Dorado, was with him on the brief for appellant.

*John E. Sanders*, county attorney argued the cause, and *Vern Miller*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant, Mae McLaughlin, was charged as a principal, tried to a jury, and convicted of the offense of grand larceny (K. S. A. 21-533), and sentenced to the Kansas State Industrial Farm for Women, Lansing, Kansas, there to be confined for a period not to exceed seven years. The companion case is reported as *State v. McLaughlin*, 207 Kan. 594, 485 P. 2d 1360.

The testimony relative to the events surrounding the crime is conflicting in many respects, and the events set forth herein are summarized and reported as found by the jury.

Freddie Pope, a confessed accomplice to the crime and the state's principal witness—indeed, its only witness to the "facts" of its perpetration—became acquainted with the appellant's husband, Henry McLaughlin, some months prior to the commission of the offense. Pope is a hardened criminal of considerable experience in "underworld" affairs, who has accumulated a lengthy record of

convictions of previous felony offenses. He has spent eleven years in prison, where he became the "jail-house lawyer" and wrote writs for other inmates. He is no amateur at representing his own interests in criminal proceedings in court, and was singularly successful in securing probation from the confinement portion of the district court's sentence following his plea of guilty on July 18, 1969, to the crime here involved, two days after he testified against Mae and Henry McLaughlin at their preliminary examinations.

On Sunday, July 23, 1967, two black angus steers owned by Karen Pike and a hereford steer owned by Kenneth Pike, disappeared from the corral at Pike's barn located on a farm leased by him south of Eureka, Kansas. Pike last saw the cattle at 9:30 p. m. on that date. The next day he discovered the cattle were missing.

According to Pope, on Saturday, July 22, 1967, he visited with the McLaughlins at a fair in Anthony. When he returned to his home in Wichita that night, he learned the police were looking for him, and he made a hasty exit from the city. Accordingly, Pope and his colleague in crime, Johnnie Wyss, drove to McLaughlin's home in Greenwood County, near Rosalia, where, with Henry's permission, they spent the night. The next morning, Sunday, July 23, Mae fixed breakfast for Pope, Wyss and Henry in her trailer house which was parked adjacent to Henry's house.

Later that day, all of the parties decided to go for a Sunday drive, the bizarre purpose, according to Pope, was to search for antique bottles and jars in abandoned farm homes in the Eureka community. Henry's car served as the means of conveyance. After some driving and searching, they arrived at the Pike farm. Pope and Wyss commenced searching outbuildings; Henry checked the barn, and Mae looked about the farm yard and then returned to the car. Henry summoned Pope to the barn where the steers in question were found. A conversation then occurred between Pope and Henry out of Mae's presence, to the effect that Pope told Henry it looked to him like someone stole the cattle and hid them there until they could dispose of them. Henry said in effect do you think we could steal them, and Pope replied that they could if they had the means to haul them off. As hereafter noted, Mae's objection to such testimony, upon the grounds the statements were made outside her presence and were not binding upon her, was overruled. However, the entire conversation was heard by the jury before the court sustained the objection and instructed the jury to disregard it.

After Pope and Henry agreed to steal the steers, the parties returned to Henry's residence and Pope and Wyss left in Pope's station wagon for his home in Wichita to get Pope's pickup truck. Both men then drove to the Jim Frisbie place near Andover, in Butler County—Wyss in the pickup and Pope in the station wagon—where, after finding no one at home, they hitched Frisbie's four-horse trailer to the pickup and proceeded back to Henry's residence. Upon arrival at the McLaughlin residence, Pope, Wyss and Henry went into Mae's trailer and had coffee and a couple of cans of beer and waited for darkness. After it was dark, Pope, Wyss, Mae and Henry left for the Pike farm. Henry drove his car and Mae and Pope were passengers; Wyss followed in the pickup pulling the trailer. Upon arriving at the Pike farm, the trailer was backed up to the barn, and Pope, Henry and Wyss loaded the cattle into the trailer. Pope then told Wyss to drive the steers to Frisbie's farm. Henry, Pope and Mae followed in Henry's car. Upon arriving at Frisbie's farm, Pope and Wyss unloaded the steers into the barn, and the parties returned to their respective homes.

The following morning, Monday, July 24, 1967, Pope called Henry on the telephone and advised him he had made arrangements to have the steers slaughtered at the Haysville Packing Plant. Henry met Pope about 9:00 a. m. at the Frisbie place, and Pope and Wyss loaded the steers into the pickup and drove to the packing plant where they were unloaded in the slaughter room. The steers were booked and processed in Pope's name, and he arranged for the hides to be returned to him. Later that same day, Pope, Henry and Frisbie returned to the packing plant in Henry's automobile, picked up the hides, and disposed of them. Eight or ten days later, Pope was advised the beeves had been processed.

Pope relayed the message to Henry and he and Mae met Pope at the Frisbies, where Henry gave Pope his check for $130 representing payment of the butchering and processing fee. Mr. and Mrs. Frisbie, Henry, Mae and Pope drove to the packing plant where two orders were loaded into Frisbie's truck for Pope and Frisbie, and the third order was loaded into Henry's car. Frisbie received Wyss's beef because he had no place to store it. This in essence constituted the state's case.

The case on behalf of the appellant is summarized: There was no evidence Mae had any criminal record. She first saw Pope at the horse races in Anthony in July, 1967. On Sunday, July 23, 1967,

Mae and Henry were eating dinner with their old friends, Mr. and Mrs. Jim Frisbie at their home near Andover, when Pope and Wyss appeared. Pope said his mother was selling her place and he had some cattle he wanted to sell. Frisbie is a yardmaster for the Santa Fe Railway at Wichita, and told Pope if Henry looked at the cattle and thought they were all right, he would buy one. Mae and Henry returned to their home, and Pope and Wyss followed. At Rosalia, Pope, Wyss, Henry and Mae got into Mae's automobile and Pope directed her to a farm somewhere south of Eureka. Upon their arrival, Pope, Wyss and Henry got out and looked at the steers and after inspecting them, they returned to the McLaughlin residence and Pope and Wyss left in Pope's car. Pope and Wyss did not spend the previous night with the McLaughlins as testified by Pope; neither did Mae fix either Pope or Wyss a meal, and they did not go on a search for antique bottles and jars. Mae's testimony was corroborated throughout by Wyss, and Wyss testified that Mae was not present when the steers were taken.

The following morning, Monday, July 24, Henry and Mae drove to Wichita. On their way home, they stopped at Frisbie's home at about 10:00 or 11:00 a. m. While there, Pope and Wyss came by and said the steers had been delivered to the locker plant. Pope said he wanted $200. Mae wrote a check for that amount for one beef, Henry signed it, and the check was given to Pope. Frisbie gave Pope $200 in cash for one beef, and the third beef was to be Pope's.

Defendant's Exhibit 9 was identified as the $200 check given to Pope for the beef. However, the evidence showed the check had been altered. It originally bore the notation "machine hire," but was altered by Mae to "butchered beef" after it was returned from the bank. The check was dated July 24, 1967.

There was evidence that Henry paid Pope's and Frisbie's share of the processing fee since Pope had delivered the steers and Henry was indebted to Frisbie on a horse trade; that Henry wrote a check to Frisbie for $130 to pay the fee; that Frisbie cashed the check at his mother's, and the packing plant was paid in cash.

The appellant complains of numerous errors occurring at the trial. She first contends the district court erred in instructing the jury that conviction could be sustained if based upon the uncorroborated testimony of an accomplice. Instruction No. 9 reads:

"The court instructs the jury that the testimony of parties aiding, assisting,

encouraging, and abetting the crime is admissible; yet their evidence when not corroborated by the testimony of others not implicated in the crime, as to matters material to the issue, should be received with great caution by the jury, and they should be fully satisfied of its truth before they should convict the defendant on such testimony."

In 30 Am. Jur. 2d, Evidence, § 1151, pp. 327, 328, it is said:

". . . [A]t common law, it is well settled that the testimony of an accomplice, although entirely without corroboration, will support a verdict of conviction of one accused of crime unless the testimony of the accomplice appears on its face to be bold, perjury, preposterous, or self-contradictory. The common law rule has, however, been changed in many jurisdictions, generally by statutes expressly declaring that the uncorroborated testimony of an accomplice cannot sustain a conviction."

Kansas has no statute which prevents conviction on the uncorroborated statements of an accomplice. In *State v. McIntyre*, 132 Kan. 43, 294 Pac. 865, it was said:

". . . [I]t is now well settled that the uncorroborated testimony of an accomplice, if otherwise sufficient, will sustain a verdict of guilty. The credit to be given to the evidence is a matter for the determination of the jury . . ." (1. c. 48.)

See, also, *State v. Carter*, 148 Kan. 472, 83 P. 2d 689; *State v. Peasley*, 179 Kan. 314, 295 P. 2d 627, and *State v. Wood*, 196 Kan. 599, 413 P. 2d 90.

The jury was adequately cautioned by Instruction No. 9 as to the weight to be given Pope's testimony. Thereafter, the weight of the evidence and the credibility of the witnesses was solely a matter for the determination of the jury. Moreover, the record indicates the instruction was submitted by the appellant's trial counsel, and she is in no position to complain. In addition, there was testimony that, if believed by the jury, the appellant altered the check allegedly given as payment for the stolen steers. She may not complain if the jury believed the state's witnesses, rather than her own.

It is next contended the district court's definition of reasonable doubt was erroneous, and that a new trial should be granted. Specifically, the appellant complains of that part of the instruction which reads:

". . . [Y]ou are instructed that reasonable doubt is just what the words themselves imply—a doubt founded on reason. It is such a doubt as a juror is able to give a reason for."

An instruction of very similar language was approved in *State v. Patton*, 66 Kan. 486, 71 Pac. 840, and it cannot be said that error

was committed by the district court. See *State v. Wolfley*, 75 Kan. 406, 89 Pac. 1046, and *State v. Killion*, 95 Kan. 371, 148 Pac. 643.

The appellant complains the district court erred in permitting hearsay evidence over her objection. As indicated, the state's principal witness, Pope, was allowed to testify to the substance of a conversation held between him and Henry in the barn at the time the steers were discovered. That conversation related to the plan to steal the steers, and was had out of the presence of the appellant. We think no error was committed. In *State v. Borserine*, 184 Kan. 405, 337 P. 2d 697, it was said:

"Ordinarily when acts and declarations of one or more co-conspirators are offered in evidence against another co-conspirator by a third party witness or witnesses, the conspiracy should first be established *prima facie*, and to the satisfaction of the trial judge. But this cannot always be required. Where proof of the conspiracy depends on a vast amount of circumstantial evidence—a vast number of isolated and independent facts—it cannot be required. In any case where such acts and declarations are introduced in evidence, and the whole of the evidence introduced at the trial taken together shows that a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before, or after, the introduction of such acts and declarations. (*State v. Winner*, 17 Kan. 298.) Evidence of the acts and declarations of the co-conspirators, done and made in the absence of the accused, is admissible *so far as it pertains to the furtherance of the common criminal design, to its consumation, to the disposition of its fruits, and to acts done to preserve its concealment, as an exception to the rule against the admissibility of hearsay evidence.*" (l. c. 410.) (Emphasis supplied.)

As indicated, Pope's testimony was first admitted and then stricken with instructions by the district court to the jury to disregard "the conversation between the witness and Mr. McLaughlin." If the introduction of the evidence was improper, the district court in clear language admonished the jury to disregard it, and we think no prejudicial error occurred. .

The appellant further contends the evidence was insufficient to establish she aided and abetted in the commission of the crime, or was a second degree principal, and that it was insufficient to establish felonious intent. The point is not well taken.

The evidence clearly establishes that the appellant was present at the time the crime was committed. By her own admission, she was present when the beeves were picked up at the processing plant. Likewise, there was testimony showing she altered the check after it had been cashed in an attempt to make it appear the check was given to Pope in payment for a portion of the beef, which alteration would serve to substantiate her story.

Intent is seldom capable of direct proof and may be proved from surrounding circumstances. (*State v. Linville*, 150 Kan. 617, 95 P. 2d 332.) Under the circumstances, the jury was entitled to consider such evidence, along with other incriminating factors, and if believed, the evidence was sufficient to sustain a conviction of the crime charged.

The judgment is affirmed.

FROMME, J., dissenting: The evidence in this case was insufficient as a matter of law to support a conviction. It was not shown that Mae McLaughlin knowingly participated in planning or carrying out the crime. She was convicted of stealing cattle. The evidence of the state established the crime was planned and carried out by her husband and two other men, who were later convicted.

Under K. S. A. 21-105 a principal in the second degree (accessory before the fact) may be charged and punished as a principal in the first degree. (*State v. Yohe*, 203 Kan. 855, 457 P. 2d 12.) However, it must be shown that a principal in the second degree knowingly participated in the crime by doing or saying something to show a consent to the felonious purpose and to contribute to its execution.

The defendant was charged as a principal in this case and convicted of stealing three steers on the basis of Pope's testimony. Accepting that testimony as true, what did this lady do or say to show a consent to the felonious purpose and to contribute to its execution?

The morning the crime was committed she fixed breakfast for her husband and his two friends. She accompanied the three men and participated in searching for antique bottles around vacant farmsteads. When they arrived at the Pike farmstead she looked around in the farmyard and then returned to the car.

Pope testified that defendant's husband discovered three steers in the barn and the three men had a conversation about stealing the cattle, "out of Mae's presence." That evening Mrs. McLaughlin was with her husband in his car when they returned to the Pike Farm. The men had borrowed a trailer which was hitched to Pope's pickup. The pickup was driven by Wyss. The *men* loaded the steers into the trailer and Pope and Wyss hauled them to the Frisbie farm for safekeeping. The defendant remained in her husband's car and returned home with him. The next morning

the *men* loaded the steers into the trailer and hauled them to a locker plant for slaughter. The *men* picked up the hides and disposed of them later.

Carefully sifting through the state's evidence, I find nothing to establish a knowing participation in the crime by Mrs. McLaughlin. The only thing from which a consent to the felonious purpose can be inferred is her presence in her husband's car at or near the scene of the crime.

In *State v. Douglass,* 44 Kan. 618, 26 Pac. 476 it was said:

". . . [N]or have we any statute making the *consenting* to even the commission of a crime an offense, unless the consent amounts to the *counseling, aiding, or abetting* in the commission of such crime. Hence, where a thing is not an offense at all, a party cannot be guilty of committing an offense by merely consenting thereto; and even where the thing is an offense, a party can be guilty of committing an offense by consenting thereto only where his consent is of that affirmative and expressed character which amounts to a *counseling, aiding, or abetting* in the commission of the offense. 'He must do or say something showing consent to the felonious purpose, and must contribute to its execution.' (1 Am. & Eng. Encyc. of Law, 63, 64.)

". . . And that mental consent to a crime, where no expressed consent is given by any word or act, does not make the person consenting guilty of an offense, see the following authorities: *Clem v. The State,* 33 Ind. 418; *The State v. Cox,* 65 Mo. 29; *White v. The People,* 81 Ill. 333; *The State v. Hildreth,* 9 Ired. Law, 440; same case, 51 Am. Dec. 369; 1 Whar. Cr. Law, §§ 211, 211a, 211d. . . .

. . . . . . . . . . . . . .

"In the case of *The State v. Cox,* ante, it was held that 'The mere mental approval by a bystander of a murder committed in his presence, does not make an accomplice in the murder.' . . ." (pp. 625, 626.)

The state failed to prove a felonious intent on the part of Mrs. McLaughlin. This failure is highlighted in the majority opinion where the evidence on that necessary element is collected in one short paragraph at page 589 of the opinion. It read:

"The evidence clearly establishes that the appellant was present at the time the crime was committed. By her own admission, she was present when the beeves were picked up at the packing plant. Likewise, there was testimony showing she altered the check after it had been cashed in an attempt to make it appear the check was given to Pope in payment for a portion of the beef, which alteration would serve to substantiate her story."

Clearly the state's case rests solely upon the presence of Mrs. McLaughlin in her husband's car at the scene of the crime.

The balance of the evidence recited refers to matters occurring after the steers were processed and after the crime of stealing the steers had been accomplished.

Mrs. McLaughlin was not charged with concealing the crime or with assisting the others in avoiding arrest. Under K. S. A. 21-106 an accessory after the fact is guilty of a separate and distinct offense. This offense must be separately charged and carries a distinct penalty. The testimony concerning the change made on the check cannot supply evidence of a felonious intent to steal the steers. It might indicate a desire to assist her husband in avoiding arrest but she was not charged as an accessory after the fact. It should be noted the check was signed by her husband, drawn on his personal checking account and not on a joint account in which the wife had an interest.

Mrs. McLaughlin's presence when the meat was picked up from the locker does not support or prove a felonious intent to steal the steers from the Pike farm. Any inference to be drawn from her presence must depend upon evidence of a knowing participation in the crime, which is absent.

What was said in *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846 is applicable to the present case. There it was held:

"Presumption and inferences may be drawn only from facts established, and presumption may not rest upon presumption or inference on inference, and the rule is doubly applicable in criminal cases." (Syl. ¶ 8.)

One last matter deserves mention. Hearsay testimony was admitted during the trial over objection. The testimony was that of Pope concerning conversations of the three men in the barn when they planned the larceny of the cattle. These were conversations outside the hearing and presence of the defendant.

The majority justify the admission of this hearsay testimony on the basis of a special rule applicable in conspiracy cases, where third party witnesses are permitted to testify to conversations with one or more of the conspirators. *State v. Borserine*, 184 Kan. 405, 337 P. 2d 697 is quoted by the majority in support thereof. It is not applicable in the present case. The general rule requires the conspiracy to be first established *prima facie*. It is only when proof of the conspiracy depends upon a vast amount of circumstantial evidence that the requirement of a *prima facie* case may be disregarded. It should be noted the theory of admissibility upon which the exception is based is wholly inapplicable to the present case. There was no conspiracy. Mae McLaughlin took no part in the planning. There was no vast amount of circumstantial evidence and no vast number of isolated and independent facts. Additionally,

in *Borserine* it was pointed out the declarations must be such as promote and further the common criminal design previously formed. In the present case this hearsay conversation did not promote and further a common criminal design previously formed, for it was only by reason of this conversation that a common criminal design among the three men was formed.

In *State v. Johnson*, 40 Kan. 266, 19 Pac. 749 as quoted in *Borserine* it was said that mere admissions or narrations of that which took place which have no tendency to promote the common criminal intent are inadmissible against anyone but him who made it.

The eventual admonition to the jury to disregard *the conversation* came after three prior conversations of the same ·objectionable nature were admitted. It was impossible for the jury to know which of these, if any, were to be disregarded. In my opinion the *Borserine* case does not support the admissibility of this testimony and the testimony was highly prejudicial. The case should, on this point alone, be reversed and sent back for a new trial.

However, even with this prejudicial hearsay testimony, the evidence was insufficient as a matter of law to support a conviction. Therefore, I respectfully dissent.

FONTRON, J., joins in the foregoing dissent.