330 F.2d 865
 James Douglas LATHAM, Appellant,
v.
Sherman H. CROUSE, Warden, Kansas State Penitentiary, Lansing, Kansas, Appellee.
George Ronald YORK, Appellant,
v.
Sherman H. CROUSE, Warden, Kansas State Penitentiary, Lansing, Kansas, Appellee.
 No. 7705.
 No. 7706.
 United States Court of Appeals Tenth Circuit.
 April 24, 1964.
 
 Roy Cook, Kansas City, Kan., for appellants.
 J. Richard Foth, Asst. Atty. Gen., of Kansas (William F. Ferguson, Atty. Gen. of Kansas, and Park McGee, Asst. Atty. Gen. of Kansas, were with him on the brief), for appellee.
 Before BREITENSTEIN, HILL and SETH, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Appellants Latham and York, herein referred to as petitioners, are before us for the second time on consolidated appeals from the denial of habeas corpus relief. They were convicted in Kansas of first degree murder and sentenced to death. The judgments were affirmed by the Supreme Court of Kansas in State v. Latham, 190 Kan. 411, 375 P.2d 788, and certiorari was denied, 373 U.S. 919, 83 S.Ct. 1310, 10 L.Ed.2d 418. Thereafter federal habeas corpus was denied after a hearing at which petitioners were represented by counsel. We affirmed, Latham v. Crouse, 10 Cir., 320 F. 2d 120, and certiorari was denied, 375 U. S. 959, 84 S.Ct. 449, 11 L.Ed.2d 317. Each then petitioned again for federal habeas corpus. A hearing was again held with counsel appearing for petitioners, evidence was taken, findings of fact and conclusions of law were made, and relief was denied. These appeals followed.
 
 
 2
 The only point raised is that the petitioners did not have a fair trial because of alleged community prejudice said to prevent the impaneling of a fair jury. The prejudice is asserted to have arisen because of the televising in the area of an interview with the petitioners shortly after their arrest.
 
 
 3
 The murder was committed in Wallace County, Kansas, on June 9, 1961. The petitioners were arrested the next day in Utah. Shortly thereafter they confessed in the circumstances outlined in our prior opinion.[1] Utah officers permitted a television tape, consisting of a motion picture film with a sound track, to be made of an interview of the petitioners by representatives of news media. At these interviews the previously made confessions were discussed. A portion of this tape, covering four and one-half minutes, was shown over the Great Bend, Kansas, station at about 10:00 o'clock P.M. on June 15, 1961, and at 12:00 o'clock noon on June 16, 1961.[2]
 
 
 4
 On motion of the petitioners venue was changed to Russell County, Kansas. Counsel appointed for petitioners moved for a change of venue from Russell County or in the alternative for the appointment of local counsel to assist in the trial. The court overruled the motion for change of venue and appointed local counsel. In neither the motion for change of venue from Wallace County nor the motion for change of venue from Russell County did the petitioners make any mention of the telecasts. The trial began on October 23, 1961.
 
 
 5
 The record contains the voir dire examination of those who finally sat as jurors. This examination was conducted by counsel and was not restricted by the court. Sixty jurors, including all those who sat on the case, were passed for cause. None of the prospective jurors was asked whether he had heard the mentioned telecasts. All those chosen said that they could be fair and impartial jurors. All peremptory challenges were exercised.
 
 
 6
 After the trial court hearing of the first federal habeas applications, the decision in Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, was announced. On appeal counsel called our attention to that decision and urged a reversal because of the telecasts. We pointed out the differences between Rideau and the case at bar but held that the claim of jury prejudice was not before us because it had not been raised in the trial court.[3]
 
 
 7
 At the district court hearing, where the petitioners were represented by their own counsel, four of the jurors were called as witnesses. All said that they had television sets and received the station from which the objectionable telecasts were made. All denied having seen or heard the telecasts and all said that they did not know anybody who had seen or heard them.
 
 
 8
 The record contains no proof of actual or individual bias or prejudice on the part of any juror. The argument is that the telecasts created such community prejudice that the impaneling of a fair jury was impossible. This community prejudice is not established by the testimony of any witness. It is assumed from the fact of the telecasts.
 
 
 9
 The facts in Rideau are different from the facts here. In Rideau three members of the jury stated on voir dire that they had seen and heard the televised interview. Here the evidence fails to show that any juror saw or heard the telecasts. In Rideau the telecasts saturated the community. No such saturation occurred in the case at bar. In Rideau three of the jurors were challenged for cause because they had viewed the telecasts and the challenges were overruled. Here all jurors were passed for cause. The telecast in Rideau was a detailed description of the crime in response to an officer's questions. Here the admissions were tacit and in an interview with newsmen to which the petitioners apparently interposed no objection.[4] Finally, in Rideau the telecasts were made the basis of a motion for change of venue; here no such request was made on the ground of the telecasts.
 
 
 10
 This is not a case like either Rideau or Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. It more closely resembles Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872, and Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98.
 
 
 11
 The televised interviews were macabre and nauseating; but we are not concerned with the poor taste and ill-advised policy of those responsible therefor. Our specific task is to determine whether petitioners were deprived of their constitutional right to trial by an impartial jury. The burden is on petitioners to establish prejudice. We agree with the trial court that they have not sustained such burden.
 
 
 12
 Petitioners rely solely on community prejudice. This is assumed from the telecasts and is unsupported by any other evidence. Acceptance of the assumption conflicts with the fact that the able lawyers who represented petitioners did not raise the point by motion for change of venue and at the trial, over four months after the telecasts, did not interrogate the prospective jurors on the point. If the effect of the telecasts was as pervasive and prejudicial as now claimed, the fair inference is that some mention would have been made of them before or at the trial. Instead no claim was asserted on the basis of the telecasts until long after the trial. At the most we have a showing of the possibility of prejudice. That is not enough. Prejudice must be established "not as a matter of speculation but as a demonstrable reality."[5]
 
 
 13
 The judgment in each case is affirmed.
 
 
 
 Notes:
 
 
 [1]
 See 320 F.2d 122
 
 
 [2]
 The tape was received in evidence. There may have been a third telecast at 8:25 A.M., June 16, but the record is unclear in this regard
 
 
 [3]
 320 F.2d 123
 
 
 [4]
 The tape shows that the petitioners cooperated with the newsmen, willingly answered questions, and displayed no reluctance in expressing their views
 
 
 [5]
 Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268. See also Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021