No. 44,967

STATE OF KANSAS, *Appellee*, v. EDWARD EARL ANDERSON, *Appellant*.

(446 P. 2d 844)

Opinion filed November 9, 1968.

*Brian J. Moline,* of Wichita, argued the cause, and *Ralph E. Gilchrist, Carl L. Buck* and *Stephen K. Lester,* all of Wichita, were with him on the brief for the appellant.

*A. J. Focht,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant, Edward Earl Anderson, was convicted of first degree robbery, in violation of K. S. A. 21-527; two counts of attempted first degree murder, in violation of K. S. A. 21-101 and 21-401; and possession of firearms after a felony conviction, in violation of K. S. A. 21-2611. The habitual criminal act was invoked and he was sentenced to 15 years on count one, 30 years on count two, and 20 years on count three, the foregoing sentences to run consecutively; and 15 years on count four, such sentence to run consecutively with the first three counts.

Appeal has been duly perfected specifying various trial errors hereafter reviewed.

On the 20th day of May, 1966, Edward Earl Anderson (defendant-appellant) a male negro, entered the H & Y Grocery Store at 2331 East 13th Street in Wichita, Kansas, at approximately 11:00 p. m. He was wearing a grey shirt, a red plaid hunter's cap and was carrying his arm in a sling. He walked up to the courtesy booth and handed the attendant a note to the effect that "Put money in sack. Signal you dead. Period." A gun was noticed by the attendant sticking out of the sling worn by the appellant. An estimated $2,000 in currency was given by the attendant to the appellant in denominations of ten and twenty dollars, whereupon the appellant

ran out of the store into the night. (Subsequently, various witnesses standing in line behind the appellant at the courtesy booth at the time in question and the attendant positively identified the appellant.)

Shortly thereafter news of the armed robbery was broadcast over the police radio and two officers, Floyd Hannon, III, and Alfred Crawford of the Wichita police department, proceeded to the area in their patrol car. After the officers stopped at the intersection of 11th Street and Piatt in the city of Wichita, they turned the corner and observed a colored man walking in a westerly direction. They maneuvered the patrol vehicle toward the man and he walked up to the side of the patrol car. When Officer Hannon attempted to open the door, the appellant put his knees against the car so the door had to be pushed open to get him back. When the appellant was confronted by Officer Hannon outside the patrol car and asked for identification, the appellant crouched a little, reached in his hip pocket and came up with a gun. The appellant then fired two shots, one of which seriously wounded Officer Hannon.

Officer Crawford rolled out of the patrol car and then heard another gunshot which shattered the glass in the rear window of the patrol car. Thereupon Officer Crawford fired a wild shot, and the appellant ran from the scene into the darkness. Officer Crawford went to the aid of Officer Hannon who was injured.

The appellant was later arrested outside the Starlight Club on a charge of drunkenness, and was soon identified in a lineup which connected him with the robbery and the shooting. A search warrant was then obtained to search the appellant's home, and as a result of the search certain items were seized.

Several days later a second search warrant was issued, and the resulting search produced additional items.

On the 10th day of October, 1966, the appellant was brought before the trial court for trial to a jury which resulted in a finding and verdict of guilty on all counts.

The appellant specifies that the trial court erred in overruling his motion for change of venue.

In support of his motion for change of venue the appellant introduced three newspaper articles, the headlines of which were entitled: (a) "Fellow Officers Refuse Sleep in Gunman Hunt;" (b) Police Shun Rest to Hunt Gunman;" and (c) "Shooting Suspect Charged."

Counsel for the appellant in his brief argues the evidence in this case showed the appellant's arrest in connection with this crime warranted a front page story and extensive radio and television coverage. At no time, however, did the appellant in support of his motion offer any other evidence to show that prejudice existed in the community to the extent that it would be reasonably certain to deny him a fair trial.

The state introduced no evidence in rebuttal.

Before a change of venue to another county can be granted it must affirmatively appear that such prejudice exists as will be reasonably certain to prevent a fair trial. The ruling of the trial court upon this point will not be disturbed when supported by competent evidence. (*State v. Turner*, 193 Kan. 189, 392 P. 2d 863.) The allowance or refusal of an application for change of venue rests largely in the discretion of the trial court. (*Hanson v. Hanson*, 86 Kan. 622, 122 Pac. 100; and *Krehbiel v. Goering*, 179 Kan. 55, 293 P. 2d 255.)

In the recent case of *State v. Poulos*, 196 Kan. 253, 411 P. 2d 694, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63, it was said:

"The defendant's failure to present affirmative evidence that prejudice existed so as to make it reasonably certain he could not obtain a fair trial, requires a conclusion that his evidence was totally and completely insufficient to permit the district court to order a change of venue. . . ." (p. 259.)

Counsel for the appellant argues the trial court should have taken judicial notice of the newspaper clippings for the purpose for which they were submitted—an indication of community feeling.

The trial judge in denying the appellant's motion for change of venue made a rather lengthy statement setting forth his reasons for the decision, and indicated that he was not sure how far he could go in taking judicial notice of community feeling, but that he was aware of no feeling in the community which would prejudice the appellant in the trial of his case.

The state was required to produce no evidence refuting that of the appellant, particularly where the appellant failed to sustain the burden of proof cast upon him to show prejudice in the community. We find no basis in the record to support the appellant's contention that the trial court erred in overruling his motion for change of venue.

The appellant specifies that the trial court erred in its failure to afford him a separate trial on the firearms charge by requiring him

to go to trial on charges of first degree robbery and two counts of attempted murder, coupled with the firearms charge, to his prejudice.

The thrust of the appellant's argument on this point is that the trial court erred in admitting records of prior convictions when the accused did not take the stand and put his character in issue.

The state in proving the firearms charge was required to show as one element of the offense the prior conviction of the appellant of a felonious offense. This was one of the ingredients constituting the offense under the firearms statute. In the trial of the case the state introduced evidence of appellant's prior felony convictions, which included robbery with firearms, attempted second degree burglary and carrying a concealed weapon after conviction of a felony, all in the state of Oklahoma. Some of these prior felony convictions were enumerated in the firearms count of the information upon which the appellant was tried. Others were not listed but were offered by the state for the additional purpose authorized in K. S. A. 60-455, which reads:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The foregoing evidence of previous convictions was admitted by the trial court over the appellant's objection.

The appellant contends that 60-455, *supra,* applies to civil actions only, and that K. S. A. 60-447 "makes clear this category, 'Specific instances of Conduct,' includes evidence of conviction of a crime which tends to prove a trait, but only after the defendant has put his character in issue."

The appellant argues the admittance of these records of prior felony convictions disclosing armed robbery was inherently prejudicial to his case; that regardless of the nominal reason for their admittance, they could not help poisoning the appellant's defense.

Counsel for the appellant misconstrued the application of 60-455, *supra.* Its application is not dependent upon 60-447, *supra,* where the accused is first required to open the door by introducing evidence of his good character. The cases decided under this section

of the statute upon which the appellant relies are inapplicable. (*State v. Roth,* 200 Kan. 677, 438 P. 2d 58.)

The argument advanced by the appellant is controlled by the decision in *State v. Wright,* 194 Kan. 271, 398 P. 2d 339. It was there held that the rule against the admissibility of other similar but independent offenses should always be strictly enforced, and to justify any departure therefrom the evidence should come under one of the well-recognized exceptions to the general rule. Such evidence is admissible under 60-455, *supra,* when relevant to prove some other material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

It has also been held where evidence is offered under the exception afforded in 60-455, *supra,* it must be offered in the state's case in chief. (*State v. Roth,* supra.)

In the instant case the offenses with which the appellant was charged all grew out of one series of transactions. This court has heretofore reviewed the Kansas history of joinder of offenses in *State v. Brown,* 181 Kan. 375, 312 P. 2d 832, at pages 380 through 383 of the official report. In *Brown* it was held where separate and distinct felonies are charged in separate counts of one and the same information and all of the offenses charged are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment, the defendant may be tried upon all of the several counts of the information at one and the same time, and in one trial. The court further held whether a defendant who is charged with several separate and distinct felonies, as above related, may be tried upon all of the several counts of the information at one and the same time, and in one trial, rests in the sound judicial discretion of the trial court. (See, also, *State v. Hacker,* 197 Kan. 712, 421 P. 2d 40, cert. den. 386 U. S. 967, 18 L. Ed. 2d 119, 87 S. Ct. 1050; and see, *State v. Momb,* 154 Kan. 435, 119 P. 2d 544; and *State v. Browning,* 182 Kan. 244, 320 P. 2d 844.)

The appellant also specifies that the trial court erred in the giving of instruction No. 18, which was substantially equivalent to instruction No. 10 set out in the opinion of *State v. Wright,* supra, at page 276 of the official report. For the reasons heretofore stated the trial court did not err in giving instruction No. 18.

The appellant specifies that the trial court erred in allowing

into evidence currency found in the appellant's room over the objection of counsel.

When the appellant's room was searched the second time by law enforcement officials pursuant to the second search warrant, they found United States currency totaling $400 in denominations of ten and twenty dollar bills hidden in the waste basket beneath a paper sack which was inserted to interline the waste basket. This currency together with a .22 long rifle hollow point live bullet, which was found on top of the dresser in the appellant's room, were admitted into evidence over objections. Evidence had previously established that Officer Hannon was shot with a .22 caliber bullet, and he identified the pistol used by the appellant in the shooting to be a .22 caliber revolver.

The appellant argues this currency could not be identified as the money taken in the robbery; that the money was found subsequent to the confinement of the appellant; and that there was evidence that other people had control of and access to the apartment in which the appellant was living. The appellant also argues that while the fruits of the crime are always admissible at the trial as tending to show the possessor's participation, an essential to the admissibility of such evidence is that a *prima facie* showing be made that the property was stolen. It is argued there was no connection in the instant case linking the robbery to the currency.

While it was specifically admitted at the trial that the currency in question could not be identified as the money taken in the commission of the crime, the testimony of the attendant at the courtesy booth disclosed the currency given to the appellant, whom he identified, was in denominations of ten and twenty dollar bills. There was other evidence given by the landlady where the appellant stayed. She testified the appellant's rent had been due the day before and was not paid; the appellant had been behind on his rent for a period of several weeks due to a stay in the hospital, and he had been paying an extra dollar per week on his weekly rent to make up for the deficit. His landlady stated she was home at 6:30 p. m. on the night of the robbery and heard the appellant in his apartment. However, she did not see him. She went to a movie and later that evening returned. At about 12:30 a. m. the following morning, which was approximately one hour after the robbery, the appellant came to her and paid her all of his rent, paying him up until May 26, 1966.

The objections of the appellant to the admission of the currency in evidence go more to the weight of the evidence than to its admissibility. In 1 Wigmore on Evidence (3rd Ed.) § 154, it is stated:

"The mere possession of a quantity of *money* is in itself no indication that the possessor was the taker of money charged as taken, because in general all money of the same denomination and material is alike, and the hypothesis that the money found is the same as the money taken is too forced and extraordinary to be receivable. But where the denominations of the money found and the money taken correspond in a fairly close way, the fact of the finding of that specific money would have probative value and be relevant, because the money found is fairly marked as identical with the money taken.

"Another mode, however, of making the fact of money-possession relevant is to show its *sudden possession, i. e.* to show that before the time of taking the person was without money, while immediately after that time he had a great deal; this reduces the hypotheses to such as involve sudden acquisition, and a dishonest acquisition thus becomes a natural and prominent hypothesis. On such conditions the possession of unidentified money becomes relevant." (p. 601.)

The foregoing rule was followed in *State v. Grebe*, 17 Kan. 458, where it was held that possession by one who had been admittedly poor of a large quantity of money was relevant evidence against him in a case involving the larceny of money. In *State v. Gauger*, 200 Kan. 563, 438 P. 2d 463, the question concerned the admissibility of $14 in currency. There the court stated:

"The location of the currency when found (beside the appellant) and the amount thereof ($14.00) had a strong tendency in reason to prove facts material in the case. The currency had a natural and logical connection under the circumstances shown by the evidence to raise a strong inference that appellant took the money from the billfold and then hid it beside him to prevent the officers from finding the fruits of the crime on his person." (p. 565.)

The appellant specifies that the trial court erred in appointing one doctor as a sanity commission.

K. S. A. 1967 Supp. 62-1531 provides in part:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state security hospital for safekeeping and treatment; . . ."

After the state had rested its case, counsel for the appellant requested the appointment of a commission for the purpose of ex-

amining the appellant to determine whether he was capable of assisting in his defense and whether he was incompetent. This was occasioned by a refusal of the appellant to follow the advice of his trial counsel concerning the exclusion of evidence found as a result of the first search warrant which was properly issued but was not properly returned. The state made no effort to introduce the evidence seized as a result of the first search. The appellant took it upon himself, however, to insist that the first search warrant which he referred to as "illegal" be placed in evidence.

By reason of counsel's request for a sanity commission, the trial court appointed one psychiatrist to examine the appellant. Counsel for the appellant made no objection at any time throughout the trial as to the appointment of a single doctor to the commission, nor was the question raised on a motion for a new trial, as to the number of persons required to serve on a commission.

When the trial court received the doctor's report it considered the report and all other evidence before it, and specifically found the appellant to be sane, capable of comprehending his position, and capable of aiding in his defense.

The appellant's failure to object at the trial to the appointment of one psychiatrist to serve as a commission, or to raise the points at any time before the trial court, in our opinion constitutes a waiver of his right to object and thereby precludes him from asserting the point for the first time on appeal. Furthermore, pursuant to the statute the trial court made a specific finding of its own. The provisions of 62-1531, *supra*, authorize the determination of the accused's sanity by three alternative methods: (1) A finding by the trial court in which such indictment or information is filed; (2) a finding by a commission; or (3) a finding by another jury empaneled for the purpose of trying such question. The finding by the trial court upon the evidence before it in the instant case was sufficient to fulfill the requirements of 62-1531, *supra*.

In our opinion the trial court did not err in ruling on any of the matters specified by the appellant, and its judgment should be and hereby is affirmed.