No. 45,741

ALLEN C. DAVIS, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(466 P. 2d 311)

Opinion filed March 7, 1970.

*Tom R. Van Sickle,* of Fort Scott, argued the cause and was on the brief for appellant.

*Ray L. Borth*, assistant attorney general, argued the cause, and *Kent Frizzell*, attorney general, and *Ernest C. Ballweg*, assistant attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: Allen C. Davis was the fifth defendant convicted of kidnapping in the first degree (G. S. 1961 Supp., 21-449, now K. S. A. 21-449) and forcible rape (G. S. 1949, 21-424, now K. S. A. 21-424), arising out of events occurring in Fort Scott, Kansas, on August 20, 1962, in which six men were involved.

A summary of events leading to the petitioner's conviction in the district court of Bourbon County is contained in *State v. Woods*, 191 Kan. 433, 381 P. 2d 533, cert. den. 376 U. S. 919, 11 L. Ed. 2d 615, 84 S. Ct. 676. Convictions of three other defendants for the same crimes were affirmed on appeal. (*State v. Burnett*, 194 Kan. 126, 397 P. 2d 346; *State v. Kinnell*, 197 Kan. 456, 419 P. 2d 870; *State v. Ayers*, 198 Kan. 467, 426 P. 2d 21.)

On October 3, 1964, the petitioner entered a plea of guilty to the charge of forcible rape, and on October 3rd, and 4th, he was tried by a jury and found guilty of kidnapping in the first degree. The jury prescribed a sentence of life imprisonment.

On October 31, 1962, the petitioner's motion for a new trial was argued and overruled, and he was sentenced by the district court.

On April 26, 1963, the petitioner's appeal from his conviction was filed with the clerk of the supreme court, but on November 8, 1963, the appeal was dismissed on motion by the state. A subsequent motion for reinstatement was denied.

On June 28, 1968, the petitioner filed a motion pursuant to the provisions of K. S. A. 60-1507 to set aside the judgment and sentence.

On November 18, 1968, the district court of Bourbon County held an evidentiary hearing on the motion, the defendant being present in person and represented by court appointed counsel. On November 30, 1968, an order was entered denying petitioner's motion, and he has appealed.

The petitioner first contends that denial of his motion for a change of venue filed September 19, 1962 (before commencement of his trial on first degree kidnapping), prevented him from having a fair trial.

The appellee argues the denial of a motion for a change of venue is not a proper subject to be raised at a hearing commenced under

K. S. A. 60-1507 since such a proceeding cannot ordinarily be used as a substitute for a direct appeal involving mere trial errors, or as a substitute for a second appeal. (*Brown v. State,* 198 Kan. 527, 426 P. 2d 49; *Hanes v. State,* 196 Kan. 404, 411 P. 2d 643; Supreme Court Rule No. 121 [*c*] [4], now 121 [*c*] [3].)

Such a contention has considerable merit when the question of venue is not one of a constitutional nature, or one arising from exceptional circumstances, within the purview of Rule No. 121, supra.

In the recent case of *Baker v. State,* 204 Kan. 607, 464 P. 2d 212, it was held:

"A proceeding under K. S. A. 60-1507 cannot be used as a substitute for a direct appeal involving mere trial errors; but if the trial errors affect constitutional rights, they may be raised in the collateral proceeding, even though they could have been raised by direct appeal, provided there were exceptional circumstances excusing the failure to appeal. (Rule No. 121 [*c*] [3].)" (Syl. ¶ 2.)

In *Barnes v. State,* 204 Kan. 344, 461 P. 2d 782, it was said:

". . . To avoid proliferating litigation and give meaningful review in such cases, this court has attempted to consider points raised by persons accused of crime at the first opportunity, where it appears they are entitled to a review. Accordingly, the 'exceptional circumstances' affording review in a 1507 proceeding where the errors have not been raised on appeal, have in the past been rather loosely construed. . . ." (l. c. 351.)

See, also, *Jackson v. State,* 204 Kan. 841, 466 P. 2d 305.

On November 11, 1963, the petitioner's direct appeal was dismissed in this court for failure to comply with Supreme Court Rule No. 8 (*d*) and (*e*). Since that time Rule 8 (*d*) has been amended to permit an application for an extension of time in which to file papers *where the failure to file such application before the time has expired is the result of excusable neglect.* In other words, a party is now permitted to show "excusable neglect" when seeking application for additional time, whereas, previous to July 1, 1967, he was not entitled under the rule to make that showing.

Moreover, there is no showing in the record, or elsewhere, that the petitioner intentionally waived his right to perfect his direct appeal and have his case heard by this court on the merits. The record does not show whether petitioner attempted to appeal *pro se,* or whether counsel was appointed to conduct such appeal pursuant to Supreme Court Prefatory Rule No. 1, promulgated April 16,

1963. (201 Kan. xv.) In any event, he made application to reinstate his appeal, which was denied.

It was also said in *Baker v. State,* supra:

"As a matter of fundamental fairness we believe that where, as here, a defendant on direct appeal has been precluded from a review of alleged trial errors affecting his constitutional rights because of an appellate procedural rule which has since been abrogated [amended], exceptional circumstances exist within the purview of Rule No. 121 (*c*) (3) . . ." (l. c. 610, 611.)

For reasons stated above, we are of the opinion there are "exceptional circumstances" existing in this case within the meaning of Rule No. 121 (*c*) (3), Rules of the Supreme Court, 201 Kan. xxxiii, so as to entitle the petitioner to have review of alleged trial errors having a constitutional basis.

In asserting his claim of error (the denial of his motion for a change of venue) the petitioner contends the district court erred in overlooking "the mood, feeling, and disposition of attitudes within a rather small community of people from which the jury was drawn." Also, the magnitude of the crime charged and hastiness of the trial date combined to create the "probability of unfairness."

In support of his contention, the petitioner, at the 1507 hearing, called as witnesses: his attorney whom he had retained at the time of his trial, and his mother, and he testified on his own behalf. His attorney testified he received approximately a dozen hostile and unfriendly telephone calls concerning the case. The petitioner's mother testified a crowd hostile to Negroes filled the grounds of the courthouse during the preliminary hearing. The petitioner stated, "We were kicked at and spit at as we were changed from the county jail to the courtroom."

The record contains no affidavits, exhibits, or other evidence supporting the petitioner's contention, and from the testimony given at the hearing, the district court concluded:

"5. The matter of a change of venue was argued at length in this and the related cases. At the time of petitioner's arrest and at the time of his preliminary examination on the 28th day of August, 1962, there were hostile, unfriendly and insulting remarks directed toward petitioner, the other defendants, and counsel who then represented them. There was a large attendance at the preliminary examination. This court was aware of the situation at the time the motions for change of venue were presented. Trial was held in October, 1962; the audience section of the courtroom was full during the trial but so far as this court observed at the time of trial and so far as the court is presently informed there were no hostile acts or threats at that time. There was public interest in the trial, and news coverage, as is usual in cases of a

similar nature. The number of jurors called was not excessive for a capital case; the spectators were not unruly; and there were no incidents tending to show prejudice at the time of trial. The court concludes that its original ruling on the motion for change of venue did not result in a failure to give petitioner a fair trial."

Before a change of venue to another county can be granted, it must affirmatively appear that in the county in which the cause is pending there exists such prejudice so as to be reasonably certain of precluding the defendant a fair trial. (*State v. Welch,* 121 Kan. 369, 247 Pac. 1053; *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806; *State v. Turner,* 193 Kan. 189, 392 P. 2d 863.) And the ruling of the district court on the question will not be disturbed if supported by competent evidence, and there is no showing of prejudice to the substantial rights of the defendant. (*State v. Miller,* 131 Kan. 36, 289 Pac. 483; *State v. Hooper,* 140 Kan. 481, 37 P. 2d 52; *State v. Poulos,* 196 Kan. 253, 411 P. 2d 694, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63.)

In *State v. Poulos,* supra, it was said:

"The defendant's failure to present affirmative evidence that prejudice existed so as to make it reasonably certain he could not obtain a fair trial, requires a conclusion that his evidence was totally and completely insufficient to permit the district court to order a change of venue . . ." (l. c. 259.)

Likewise, prejudice must be established "not as a matter of speculation but as a demonstrable reality." (*Woods v. Munns,* 347 F. 2d 948; *Latham v. Crouse,* 330 F. 2d 865, cert. den. 379 U. S. 866, 13 L. Ed. 2d 69, 85 S. Ct. 134.)

The defendant claims that under the doctrine of *Estes v. Texas,* 381 U. S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628, and *Sheppard v. Maxwell,* 384 U. S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507, he need not conclusively show prejudice, that is, "identifiable prejudice to the accused need not be shown if . . . the totality of the circumstances raises the probability of prejudice."

As stated in *State v. Ayers,* supra:

"The *Sheppard* case reached the Supreme Court by way of federal habeas corpus. As in *Estes,* Sheppard's complaint was denial of due process in receiving a fair trial by reason of the massive, prejudicial publicity that attended upon his prosecution during pretrial proceedings and during the trial itself. In remanding the case to the Federal District Court with instructions to issue the writ unless the state reprosecuted within a reasonable time, the fundamental error of the trial judge was declared to be his failure to supervise his own courtroom. It was stated the trial court failed to invoke procedures, enumerated in the opinion, which would have guaranteed Sheppard a fair trial. The court

also noted that the trial court had compounded its fundamental error by holding it lacked power to control the publicity about the trial." (l. c. 469, 470.)

The adverse feeling and publicity in Bourbon County clearly did not approach the extent of the publicity present in the *Sheppard* case. We cannot say under the total facts and circumstances of this case that the defendant's trial was "fatally infected" with an absence of "that fundamental fairness essential to the very concept of justice" alluded to in *Lisenba v. California,* 314 U. S. 219, 86 L. Ed. 166, 62 S. Ct. 280.

In *State v. Woods,* supra, involving the same point here urged, it was said:

"The appellant filed a motion for change of venue and argues strongly that feelings ran high against the defendants in the town . . . The trial court took the question seriously, passed upon it and found that there existed no serious threat of violence or feeling against the defendants in general and that a fair trial could be had in Bourbon county. We know of no reason why the court should be reversed on this holding." (l. c. 435.)

We hold the district court did not err in its conclusion that "its original ruling on the motion for change of venue did not result in a failure to give petitioner a fair trial."

Secondly, the defendant asserts the crime of kidnapping was not proven; specifically that one element of the crime, asportation, was not present.

The same contention was made in the *Woods* and *Ayers* cases which arose from the same events as the present case. The petitioner does not claim to be in a different position than Woods and Ayers, but he does ask us to reconsider our construction of the "kidnap" statute (21-449). We adhere to the construction of the statute as first expressed in *State v. Brown,* 181 Kan. 375, 312 P. 2d 832. In *State v. Ayers,* supra, we said:

". . . In *Brown* we considered the words of the statute (21-449, *supra*), as well as common-law language and said 'kidnap,' means to take and carry away any person by unlawful force or fraud and against his will. We attached no other requirements such as a minimum distance of asportation. It is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping . . ." (l. c. 471.)

The petitioner's third and fourth claims of error are that K. S. A. 21-449 is unconstitutional under the provisions of Section Nine of the Bill of Rights of the Constitution of the State of Kansas, and of the Eighth Amendment to the Constitution of the United States because it provides for cruel or unusual punishment.

The petitioner argues that where the duration of a sentence is of such extreme length, the mere fact of life imprisonment for a boy of seventeen years is cruel and unusual. We think that fact is insufficient to vacate the sentence imposed by the district court.

The petitioner cites no authority in support of his position, but to the contrary, cites cases holding that life imprisonment for a person convicted of kidnapping is not so severe as to constitute cruel, unusual and excessive punishment. (*Hess v. United States,* 254 F. 2d 578; *Kelly v. United States,* 76 F. 2d 847.) See, also, *State v. White,* 44 Kan. 514, 25 Pac. 33; *State v. Kilpatrick,* 201 Kan. 6, 439 P. 2d 99.

Nothing appearing in the record to warrant reversal, the judgment of the district court is affirmed.