No. 45,422

State of Kansas, *Appellee,* v. Samuel E. Beasley, *Appellant.*

(469 P. 2d 453)

Opinion filed May 9, 1970.

*John O. Somers,·* of Kansas City, argued the cause and was on the brief for appellant.

*Nick A. Tomasic,* chief deputy county attorney, argued the cause, and *Frank D. Menghini,* county attorney, was with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This is an appeal from a conviction of murder in the first degree. (K. S. A. 21-401.) The jury's verdict fixed the appellant's punishment at confinement and hard labor in the Kansas State Penitentiary for life.

On October 30, 1967, Beasley entered the premises of the Hudson and Odom Tire Company located in the Fairfax Industrial District in Kansas City, and in an attempt to perpetrate a robbery of that establishment, he shot to death George Felker, an employee.

Beasley was observed while on the premises and was subsequently identified by an employee who witnessed the shooting. As he ran from the premises and entered an automobile to escape, he was observed by two employees of a business adjacent to the tire company. Within an hour after the attempted robbery, the car driven by one of the co-defendants was stopped and its two occupants (not including Beasley) were taken into custody.

Beasley was next seen in the early morning of November 4, 1967, in a club at Des Moines, Iowa. A police officer, after being informed that a man in a gray jacket had a pistol in his pocket, entered the club, observed that Beasley was intoxicated, and confronted him. The gun was taken from him and he was arrested on a charge of intoxication, and carrying a concealed weapon.

Beasley was advised of his rights, and was notified he was wanted by Kansas authorities. Later that day at 5:00 o'clock p. m., Beasley waived extradition in writing before a magistrate of a court of record in Des Moines, and agreed to return to Kansas City, Kansas, on the warrant issued for his arrest. At his request, the Des Moines police took him to the bus depot to pick up his luggage. A depot attendant removed the luggage from a locker, handed it to Beasley and he identified it as his. Beasley was then returned to Kansas by Wyandotte County police officials.

Beasley was represented by retained counsel at his preliminary hearing. On December 19, 1967, an information was filed charging him with killing Felker while in the perpetration of a robbery. On March 25, 1968, trial began, and on March 30, 1968, the jury returned a verdict of guilty. On appeal it is contended several errors occurred during the trial.

Beasley first argues the gun taken from him in Des Moines, Iowa, and which was identified as the murder weapon, was unlawfully seized and it was error to admit it into evidence at the trial.

The officer who arrested Beasley testified he was walking along the street when the owner of a club came across the street and told him there was a man in the club who had a gun in his coat pocket. The officer entered the club and was told by the bartender that Beasley was the man with the gun. Beasley was intoxicated and made two or three trips up and down the bar pushing and shoving people. The officer stopped Beasley near the rear of the bar, showed him his badge, and told him he wanted to see him outside. Beasley stuck his hand in his right coat pocket and the officer put his gun on him. At the same time, the officer grabbed the right coat pocket and took the gun out of the pocket. Beasley claims the officer had no warrant for his arrest and no probable cause existed to arrest him or search his person. The point is not well taken. The factual situation presents a legal arrest made in response to information from two private citizens that crime was being committed, that is, that Beasley was intoxicated and was carrying a concealed weapon in violation of the laws of the State of Iowa. It

is clear the officer had probable cause to suspect Beasley of committing those crimes.

In *State v. Little,* 201 Kan. 94, 439 P. 2d 387, it was said:

"While it is true that an arrest otherwise unlawful is not made lawful by what the subsequent research discloses, a search without a warrant is, within limits, constitutionally permissible if incident to a lawful arrest. An arrest without a warrant to support an incidental search must be made with probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (citation.)" (l. c. 96.)

Under the attendant circumstances, the arrest was lawful and the property seized incident to that arrest was restricted to the gun, and was reasonable under the Fourth Amendment to the Constitution of the United States and Section 15 of the Bill of Rights of the Constitution of Kansas. (*State v. Bell,* 205 Kan. 380, 469 P. 2d 448, and *State v. Thomas,* 205 Kan. 442, 469 P. 2d 279.)

Beasley next contends the district court erred in refusing to grant a continuance four days prior to the trial in order to permit his examination by a fourth psychiatrist.

On February 8, 1968, three medical doctors, two of whom were psychiatrists, were appointed as a commission to determine whether Beasley was able to comprehend the nature of the charges against him and to assist counsel in preparing his defense. (K. S. A. 62-1531.) The commission filed its report on February 13, 1968, finding Beasley able to comprehend his position and make his defense. Seven days later, he sought the continuance to permit his examination by the fourth psychiatrist. In response, the court stated:

". . . I will cooperate with you in every way possible towards getting psychiatric testimony. Surely Dr. Satten must have some assistants up there at Menninger, and we can even arrange transportation to have Mr. Beasley taken up there, we will try to, although we would prefer that they come down here. The Court has already authorized the payment for same, but as far as putting off the trial, I just don't think we ought to. This alleged crime took place some five months ago. The trial setting was given well in advance and I don't think you have a case for putting off the trial, so I have to turn you down."

The matter of a continuance in a criminal case is largely in the discretion of the district court. Unless the ruling prejudices the defendant's substantial rights in the trial of his case it will not be disturbed. (*State v. Latham & York,* 190 Kan. 411, 375 P. 2d 788, cert. den. 373 U. S. 919, 10 L. Ed. 2d 418, 83 S. Ct. 1310.)

During the trial, Beasley was examined by a Dr. McKnelly who

gave him some drugs and obtained information from him, but Beasley did not want the doctor to testify. Counsel concurred in Beasley's decision. The record shows that two capable trial lawyers were appointed to represent Beasley, and the case was specially set for trial on March 25, 1968. Appointed counsel vigorously represented Beasley at the trial and showed exceptional talent in protecting his rights at each and every step of the proceeding. No showing was made by Beasley that he was prejudiced by reason of denial of further examination, and under the circumstances shown in the record the district court did not abuse its discretion in overruling his motion which would have further delayed the trial.

It is next contended the district court erred in receiving evidence relating to the purchase of the murder weapon for the reason that the record of the sale was not entirely, but only partially, made by the witness who identified the record.

The gun was purchased October 19, 1967, from the Gardner Loan Company, a pawnshop in Minneapolis, Minnesota, owned and operated by a father and son. An ordinance of the city of Minneapolis requires that a vendor of a weapon which can be concealed shall make a record of the sale by describing the weapon, showing the make, model and caliber, a description of the purchaser and his name and residence, the time of day and the date of the purchase, the amount paid, and whether the purchaser was Negro or Caucasian, which report shall be signed by the individual who carried the weapon out of the store. The record is entitled "Report of Concealed Weapons Sold or Given Away," and is submitted to the Minneapolis police department. Those records are kept in the regular course of business to record the details of each sale. The son testified he brought the record of the sale of the gun with him from his place of business and that he and his father worked together when the weapon was sold. He identified the record of sale and pointed out which entries he made and those made by his father. He made the entries stating the name and address of their place of business and the permit number issued to their company by the Minneapolis police department. His father recorded the description of the purchaser who signed the record with the name S. E. Beasley, recorded the date and time of sale, and the caliber, make, and serial number of the gun.

K. S. A. 60-460 (m) states the exception to the hearsay rule with respect to business records. The subsection pertains to business

entries and the like, and provides that such records are admissible in evidence if the judge finds they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that sources of information from which made the method and circumstances of their preparation were such as to indicate their trustworthiness. This subsection has been considered by this court in *McElhaney v. Rouse*, 197 Kan. 136, 143, 144, 415 P. 2d 241, *State v. Foster*, 198 Kan. 52, 422 P. 2d 964; *State v. Taylor*, 198 Kan. 290, 424 P. 2d 612, and *In re Estate of Bernatzki*, 204 Kan. 131, 460 P. 2d 527.

Before the district court admitted the record of the sale of the gun in the instant case, it was required to find the record was made in the regular course of the pawnbroker's business and at or near the time of the event recorded, and that the sources of information and the method and circumstances of its preparation were such as to indicate its trustworthiness. The notes of the Advisory Committee which drafted the Code of Civil Procedure state the policy of the subsection is to leave it up to the judge to determine whether the sources of information, method and time of preparation reflect trustworthiness. The evidence clearly supports the district court's affirmative determination. There was evidence which infers the entries were made at the time Beasley purchased the gun. In addition to the record being a business entry, it was a record required by law. We are of the opinion the foundation facts were established by the relevant testimony of the son and that to make the record admissible in evidence it was unnecessary the father be called to authenticate the entries he made since they were fully identified by the son who was qualified by knowledge of the facts. (Gard, Kansas Code of Civil Procedure, Annotated, § 60-460 (*m*), p. 483.)

It is claimed the district court erred in admitting into evidence Beasley's suitcase and its contents for the reason the suitcase was seized by an illegal search of his locker at the bus depot. The facts do not support the claim. As indicated, after Beasley was arrested in Des Moines, he requested he be taken to the bus depot to get his luggage. He was handed his suitcase by an attendant, and identified it as being his. He then carried it with him to Kansas City where it was placed in a locker in police custody. There is nothing to indicate Beasley's locker in the bus depot was searched, hence, there is no basis for his complaint that his suitcase was taken

by an illegal search—it was obtained at his request. No prejudicial error resulted to Beasley.

It is urged the district court erred in denying a change of venue for the reason that "the minds of the persons in the district in which the case was tried were prejudiced against the appellant and he could not and did not receive a fair trial." The only source of prejudice relied upon was an account of the crime in a local newspaper. Beasley offered no other evidence in support of his claim that prejudice existed in the community to such an extent as to preclude a fair trial, nor did he show how the news article prejudiced the minds of the jurors. In denying the motion for a change of venue, the district court stated, "I have never seen a capital case with less publicity about it than this one," and counsel agreed there had been "less publicity in this case."

Before a change of venue to another county can be granted, it must affirmatively appear there exists such prejudice in the county in which the cause is pending as to be reasonably certain the defendant cannot receive a fair trial. The ruling of the district court on the question will not be disturbed, if supported by competent evidence, and there is no showing of prejudice to the substantial rights of the defendant. (*Davis v. State,* 204 Kan. 816, 820, 466 P. 2d 311; *State v. Anderson,* 202 Kan. 52, 446 P. 2d 844, and cases cited.) Beasley failed to sustain the burden of proof cast upon him to show prejudice in the community. The district court did not err in overruling his motion for a change of venue.

Beasley further argues the district court erred in refusing to grant a view of the scene of the crime by the jury. He requested the jury be allowed to view the premises to "get a clear picture in their minds" of the events that took place and the location of the buildings and points of observation of various witnesses. Objection was made to a view for the reason the area had changed since the time of the crime. Prior to this objection, the state sought to introduce photographs of the scene taken some four and a half months after the crime, but they were objected to by Beasley for the reason the area had changed. Since a view would not have enabled the jury to better understand the evidence and would almost certainly have been misleading, the district court did not err in denying Beasley's request. (K. S. A. 62-1818.)

It is further claimed the district court erred in admitting color photographs of the decedent taken at the time of the autopsy be-

cause their only value was to inflame the minds of the jurors. Beasley's main objection was that the pictures were in color. The photographs were introduced for the purpose of identifying the deceased and to portray the facts described by the coroner concerning the autopsy performed and to show the cause of death. We think the photographs were relevant and material, and no prejudicial error occurred. See *State v. Turner*, 193 Kan. 189, 392 P. 2d 863, and cases cited, where the point is fully discussed.

Beasley contends the district court erred in applying the provisions of K. S. A. 21-107a to double his life sentence. As indicated, the jury found Beasley guilty of murder in the first degree and determined he should be punished by life imprisonment. He argues the sentence is void for the reason that it is the duty of the jury, and of the jury alone, under the provisions of K. S. A. 21-403, to determine the penalty to be inflicted, and that the district court may not double the sentence under K. S. A. 21-107a. He argues the Legislature did not intend the Habitual Criminal Act should be applied in capital cases; further, that if the sentence is not held void, he is entitled at the very least to have the sentences imposed run concurrently.

It is difficult to understand the action of the district court in imposing the two life sentences on Beasley who obviously may serve only one life sentence in the penitentiary. However, the record indicates the district court was of the opinion it had no discretion in the matter, and was compelled to impose sentence under the Habitual Criminal Act.

Beasley has cited no cases from this jurisdiction, and we know of none, which prohibts the imposition of a sentence as was imposed in the instant case. K. S. A. 21-107a applies when a person is "convicted a second time of a felony." It is conceded Beasley had a prior felony conviction. In *State v. Ricks*, 173 Kan. 660, 250 P. 2d 773 it was *held*:

"G. S. 1949, 21-107a is a law of general application and creates no exceptions with respect to any particular second or third felony previously committed." (Syl. ¶ 2.)

And in the opinion it was stated:

"The avowed purpose and salutary provisions of the habitual criminal law as a disciplinary measure for those whom previous conviction and punishment have failed to reform were stated early in *State v. Woodman*, supra, and need not be repeated here." (l. c. 661.)

In *Johnson v. Crouse*, 191 Kan. 694, 383 P. 2d 978, it was said:

". . . Our habitual criminal act merely provides a more severe penalty for the commission of a felony by an habitual criminal than by one who is a first time offender . . ." (1. c. 700.)

Contrary to Beasley's contention, the sentences are not to run concurrently. In fact, the sentence is to be doubled. In *Elliott v. Evans,* 162 Kan. 447, 177 P. 2d 211, it was held:

"Following *Childs v. Amrine,* 155 Kan. 383, 125 P. 2d 349, it is held: 'Under the provisions of the 1927 habitual criminal act (G. S. 1935, 21-107a) it was intended, in the event a second felony was committed, to double the punishment which would have been imposed if defendant had been a first offender. The sentence to be doubled is that sentence which ordinarily would have been imposed for the first commission of the second offense and not the sentence prescribed for the commission of the first felony for which the person was previously convicted.'" (Syl. ¶ 1.)

We think Beasley's contention cannot be sustained. It is well settled in this state that it is the nature of the offense, not the manner or duration of punishment, which determines the applicability of the Habitual Criminal Act. (*State v. Shepley,* 203 Kan. 635, 456 P. 2d 8.)

As indicated, the jury fixed Beasley's punishment at life imprisonment. In sentencing him to confinement in the penitentiary, the district court simply doubled that sentence by imposing the Habitual Criminal Act.

Other points have been raised. We have carefully examined them and they are without merit. Finding no error in the record, the judgment of the district court is affirmed.

FONTRON, J., dissenting in part: In my judgment the provisions of K. S. A. 21-107a cannot rationally be applied to a life sentence, and for this reason I must respectfully dissent from subsection (4) of the syllabus and corresponding portions of the opinion.

SCHROEDER, J., joins in the foregoing partial dissent.