No. 46,128

STATE OF KANSAS, *Appellee*, v. HENRY D. McLAUGHLIN, *Appellant.*

(485 P. 2d 1360)

Opinion filed June 12, 1971.

*Cliff W. Ratner,* of Ratner, Mattox, Ratner, Ratner and Barnes, of Wichita, argued the cause, and *Patrick L. Dougherty,* of the same firm, and *Walter F. McGinnis,* of McGinnis and McGinnis, of El Dorado, were with him on the brief for the appellant.

*John E. Sanders,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action wherein the defendant was convicted of grand larceny for cattle rustling contrary to K. S. A. 21-533 and sentenced pursuant to K. S. A. 21-534 in the district court of Greenwood County, Kansas, on May 6, 1970. Appeal has been duly perfected.

Trial errors are asserted on appeal for a reversal of the judgment.

The facts in the case are essentially the same as those stated in *State v. Mae McLaughlin,* 207 Kan. 584, 485 P. 2d 1352, because they arise from the same occurrence. In that case Mae McLaughlin, the wife of the appellant herein, was convicted of cattle rustling.

On the 23rd day of July, 1967, three 4-H steers, one belonging to Kenneth Pike and two belonging to his daughter, disappeared from a barn on property leased by Pike which was located one mile south of the Farmington schoolhouse in Greenwood County, Kansas. Two of the steers were Angus, weighing approximately 950 pounds, and one of the steers was a Hereford, weighing approximately 1,000 pounds. They were valued at somewhere between $250 and $300. The principal witness upon which the state relied to prove the offense was Freddie Glenn Pope, a confessed accomplice in the crime, with a long prior criminal record. Pope testified the cattle were taken while he and Johnnie F. Wyss, who also confessed to the crime, and Henry D. McLaughlin (defendant-appellant) and his wife, Mae McLaughlin, were on a trip looking for antiques in abandoned farmhouses. Pope testified that upon stopping at a vacant house, the four discovered the three steers in a barn. He said:

"There were weeds growing up all around it and you could tell from the driveway it hadn't been driven frequently. I told Mr. McLaughlin it looked to me like the cattle were hid there. I couldn't understand why three animals would be at a vacant farmhouse and one being tied up to keep it from jumping the fence or something similar to such. I told him it looked to me like someone stole the cattle and hid them there until they could dispose of them. Mr. McLaughlin said, 'Do you think we can steal them from them?' I told him if we had the means to haul them off we could."

After planning to take the cattle the four left to get a four-horse trailer owned by James W. Frisbie to move the cattle. Upon returning to the McLaughlin home near Rosalia, Kansas, Pope and Wyss set out to get Frisbie's trailer and hitch it to Pope's truck. When this was accomplished, Pope and Wyss returned to the McLaughlin residence pulling the horse trailer. Between the hours of 8 and 9 p. m. on Sunday, July 23, 1967, Pope left the McLaughlin residence in the McLaughlin car with the appellant and his wife, and Wyss left at the same time driving the pickup truck and pulling the trailer.

Upon arrival at the scene the three cattle were loaded in the trailer, and a post-hole auger was taken from the shed and placed in the pickup, the appellant assisting the other two men. Then they all returned to the Frisbie residence near Wichita in Butler County and unloaded the steers in Frisbie's barn.

Pope made arrangements the next day over the telephone with the Haysville packing plant at Haysville, Kansas, to have the three steers slaughtered and packaged. Wyss and Pope delivered the

steers to the locker plant that same morning, Monday, July 24, 1967, at approximately 10 a. m. The animals were checked into the plant as Pope No. 1, Pope No. 2 and Pope No. 3.

Pope told Mr. Acord, the owner of the locker plant, over the telephone that he wanted the hides returned and he made the necessary arrangements. Later on that same day between 2 and 3 p. m. Pope, the appellant and Frisbie returned to the locker plant for the hides, according to Pope's testimony. The three men took the hides in the McLaughlin car south to Sumner County and dumped them out.

Approximately ten days later Pope was advised the meat had been processed, and he returned to the locker plant along with Frisbie and his wife and the appellant and his wife to pick up the meat. Pope was charged with the crime of grand larceny of neat cattle in Greenwood County and pleaded guilty to the charge.

Wyss also pleaded guilty to the offense and was sentenced to the Kansas State Penitentiary. He was an inmate at that institution when he testified at the trial of this case. According to Wyss, he and Pope stole the cattle and the McLaughlins were not involved.

Walter Acord, the owner of the Haysville packing plant, testified that Pope brought the three animals to his locker plant, which were slaughtered and processed, and that on or about August 4th or 5th, three men and a woman came to the locker plant to pick up the processed meat, identifying the appellant and Pope as two of the men.

Hershal Martin, employed by Mr. Acord on July 24, 1967, at the locker plant in Haysville, said he knew Pope by sight and that Pope returned to the locker plant for the hides after 2 p. m. on the 24th day of July. He testified two men returned with Pope to pick up the hides and he identified Wyss as one of them. Martin threw the hides into the trunk of *a car*.

The appellant testified he did not take the cattle, but was approached by Pope and Wyss at the Frisbie residence on Sunday, the 23rd day of July, 1967, when Pope offered to sell him a beef. He further testified he viewed the cattle at the barn where they were located before they were taken and told Pope he would buy one. He also told Frisbie they were good butchering cattle and Frisbie said he would purchase one. The appellant testified Pope told him the cattle belonged to his mother and they had to be moved or sold. The appellant testified he was not present when the cattle were taken and knew nothing more about them until he

was advised by Pope they were butchered and processed, and that he paid Pope $200 for his beef and picked up his beef at the locker plant. The appellant said he was not present when the hides were picked up; that he was at the Haysville locker plant only one time—when he picked up the processed beef.

Evidence of the $200 check given by the McLaughlins to Pope, and its alteration by Mae McLaughlin after clearing the bank, was not presented in the trial of the appellant. This evidence was presented only in the trial of the appellant's wife, Mae McLaughlin.

Frisbie was arrested on charges arising out of the incident here related in Butler County, and was discharged at a preliminary hearing.

The appellant challenges the trial court's order overruling his motion for change of venue. To support his motion the appellant presented one affidavit by a citizen of Greenwood County to the effect that the trial was a foregone conclusion, that the minds of the people in the community were made up, and that there was no possibility of an acquittal. The appellant argues there were twenty-one prospective members of the jury panel who had heard of the case, and four of those persons admitted they had formed an opinion. Six of the persons who actually served on the jury had heard of the case but formed no opinion. One person who served on the jury had cattle of her own stolen about the same time the crime in this case is alleged to have been committed.

It has long been the law of Kansas that a change of venue in a criminal case lies within the sound discretion of the trial court. Before a change of venue to another county can be granted, it must affirmatively appear that in the county in which the cause is pending there exists such prejudice as to make it reasonably certain the defendant will be denied a fair trial. The ruling of the trial court on this question will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant. (*Davis v. State*, 204 Kan. 816, 466 P. 2d 311, and cases cited therein.)

The failure of the defendant in a criminal action to present affirmative evidence that prejudice existed in the community so as to make it reasonably certain he could not obtain a fair trial, requires a conclusion that his evidence was totally and completely insufficient to permit the district court to order a change of venue. (*State v. Poulos*, 196 Kan. 253, 411 P. 2d 694, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63.)

Furthermore, prejudice must be established "not as a matter of speculation but as a demonstrable reality." (*Woods v. Munns,* 347 F. 2d 948, 951 [10th Cir. 1965].)

The question concerning change of venue has been extensively treated in *State v. Turner,* 193 Kan. 189, 392 P. 2d 863; *State v. Poulos,* supra; and *Davis v. State,* supra.

In cases of this nature the state is required to produce no evidence refuting that of the appellant, particularly where the appellant fails to sustain the burden of proof cast upon him to show prejudice in the community. (*State v. Anderson,* 202 Kan. 52, 446 P. 2d 844.)

We find no basis in the record to support the appellant's contention the trial court erred in overruling his motion for change of venue.

The principal point asserted by the appellant is that the trial court erred in overruling his motion to dismiss at the close of the state's case in chief, because the only evidence implicating him in the crime was the uncorroborated testimony of an accomplice. To support this point the appellant cites early Kansas cases which hold that a jury should not convict upon the testimony of an accomplice alone, unless his testimony is corroborated by other evidence on some material point in issue. (See *Craft v. State,* 3 Kan. 450; *State v. Kellerman,* 14 Kan. 135; *State v. Adams,* 20 Kan. 311; and *State v. Greenburg,* 59 Kan. 404, 53 Pac. 61.)

While these early cases have never been specifically overruled, it has clearly been the established law in this jurisdiction for many years, as at the common law, that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. In *State v. McIntyre,* 132 Kan. 43, 294 Pac. 865, it was stated:

". . . it is now well settled that the uncorroborated testimony of an accomplice, if otherwise sufficient, will sustain a verdict of guilty. The credit to be given to the evidence is a matter for the determination of the jury. . . ." (p. 48.)

Other decisions stating law to the same effect are *State v. Carter,* 148 Kan. 472, 83 P. 2d 689; *State v. Wood,* 196 Kan. 599, 413 P. 2d 90; and see Hatcher's Kansas Digest, Criminal Law, § 288; and 30 Am. Jur. 2d, Evidence, § 1151, p. 327.

In Kansas where the uniform rules of evidence have been adopted (effective January 1, 1964) it is to be noted that no statute requires an accomplice's testimony to be corroborated. It is for the jury to determine the credibility to be given to the testimony of the various witnesses called at the trial.

The jury in this case was adequately cautioned by the trial court in its instructions as to the weight to be given the testimony of the various witnesses, and more specifically, the jury was cautioned as to the weight to be given the testimony of an accomplice. Instruction No. 9 given the jury reads:

"The court instructs the jury that the testimony of parties aiding, assisting, encouraging, and abetting the crime is admissible; yet their evidence when not corroborated by the testimony of others not implicated in the crime, as to matters material to the issue, should be received with great caution by the jury, and they should be fully satisfied of its truth before they should convict the defendant on such testimony."

No objection was made in the trial court challenging instruction No. 9, nor was a more stringent instruction requested.

While the law in this state does not require corroboration of the testimony of an accomplice, corroboration of Pope's testimony was not entirely deficient.

The appellant by his own testimony established that on Sunday, July 23, 1967, he and his wife, together with Pope and Wyss, traveled in Mae McLaughlin's 1959 Ford to the place where the three head of beef were kept by Kenneth and Karen Pike; that the appellant went in the barn and looked at the cattle; that they all left and returned to Rosalia where the McLaughlins stayed. By his own testimony the appellant stated he and his wife went back to the Frisbie residence near Wichita on July 24, 1967, where Pope and Wyss arrived at about 11 a. m. At that time the three head of cattle were in Frisbie's barn. An independent state witness employed at the Haysville packing plant testified the hides of the three beefs were picked up on the afternoon of Monday, July 24, 1967. This is highly unusual when processing meat at a locker plant on a custom basis for individuals. The witness testified two men returned with Pope to pick up the hides on this occasion and he threw the hides *in the trunk of a car.* He identified Pope and Wyss, but not the other person. Pope testified there were three persons who went back to the locker plant sometime between 1 and 3 p. m. on July 24th to pick up the hides, identifying the appellant as one of them. Pope said he took the hides in McLaughlin's car south to Sumner County and dumped them out. The vehicle Pope used in connection with this case was a pickup truck. The automobile mentioned by the various witnesses was Mae McLaughlin's 1959 Ford car. From this evidence, corroborating the testimony of Pope, the jury could have found the appellant

present driving Mae's car when the hides were picked up at the locker plant.

Picking up the hides of the three head of beef cattle shortly after their slaughter at the Haysville locker plant, and taking them immediately to another county where they were dumped to conceal identity of the cattle, is corroborating evidence of action on the part of the appellant from which the jury could find the requisite criminal intent.

By his own admission the appellant testified he and his wife were present in Haysville when the processed meat was obtained from the locker plant.

In our opinion the record discloses sufficient evidence to uphold the jury's finding that the appellant was guilty of the crime charged —grand larceny of three head of beef cattle.

The appellant challenges the trial court's instruction on reasonable doubt. Instruction No. 4 given to the jury reads as follows:

"In this connection you are instructed that a reasonable doubt is just what the words themselves imply—a doubt founded on reason. *It is such a doubt as a juror is able to give a reason for.* By a 'reasonable doubt' is not meant a mere possibility or imaginary doubt or a doubt arising from a whim or mere fancy or a sudden change of mind without any apparent or adequate reason therefor, nor can it be based on groundless conjecture. It is that state of the case which, after a comparison and consideration of all the evidence presented to you leaves the minds of the jurors in that condition that they cannot say they have an abiding conviction to a moral certainty of the guilt of the defendant. A juror is understood to entertain a reasonable doubt when he does not have an abiding conviction of mind founded on the evidence or want of evidence to a moral certainty that convinces and directs his understanding and satisfies his reason and judgment that the defendant is guilty as charged." (Emphasis added.)

The appellant challenges the emphasized portion of the foregoing instruction as being erroneous. He contends it is contradictory of instruction No. 3, wherein the jury was instructed on the burden of proof, and that the instruction is confusing.

The challenged portion of instruction No. 4 was given by the court in *State v. Patton,* 66 Kan. 486, 71 Pac. 840, and approved. There, however, Justice Burch dissented and the appellant relies upon the dissent.

In *State v. Wolfley,* 75 Kan. 406, 89 Pac. 1046, the following instruction was approved:

" 'A reasonable doubt means a doubt which has some good reason for it arising out of the evidence or lack of evidence in the case; such a doubt as you are able to find in the evidence or lack of evidence a reason for.' " (p. 412.)

The court there declared:

". . . Whatever objections there may be to a juror's being told that in order to regard a doubt as reasonable he must be able to give—that it [is] to state—a reason for it, no harm can result from advising him that no doubt is reasonable unless a reason for it exists, and that is substantially the effect of the instruction under consideration." (p. 412.)

Viewing instruction No. 4 as a whole, we cannot say the jury was misled as to the meaning of "reasonable doubt." The sentence to which the appellant objects was at the beginning of the instruction. Thereafter "reasonable doubt" was fully defined in accordance with the well established law of this state.

Other points asserted by the appellant in the record have been abandoned in his brief. Finding no reversible error, the judgment of the lower court is affirmed.